UNITED STATES

v.

**Wesley KIRK, Yeoman First Class.**

**CGCMS 24066.
Docket No. 1017.**

U.S. Coast Guard Court of Criminal Appeals.

10 Nov. 1994.

**530**

Trial Counsel: LT C.D. Michel, USCG.

Defense Counsel: LT D.P. Jordan, JAGC, USNR.

Appellate Defense Counsel: LCDR Allen Lotz, USCG.

Appellate. Government Counsel: LT Garland M. Walker, USCGR.

Before Panel Four BAUM, O'HARA, and WIESE, Appellate Military Judges.

BAUM, Chief Judge:

After pleading not guilty, a special court-martial composed of officer and enlisted members convicted Appellant of the following offenses: three specifications of unauthorized absence, two for three days and one of one-day's duration; three specifications of dereliction of duty; two specifications of failure to obey orders from a supervisor; one specification of a false official statement to a supervisor; one specification of wrongful appropriation of $100 from the imprest fund; and one specification of larceny of $1,825 from the imprest fund, in violation, respectively, of Articles 86, 92, 107, and 121, UCMJ, 10 U.S.C. §§ 886, 892, 907, 921. Appellant was sentenced to a bad conduct discharge, confinement for six months, a fine of $3,259.20, and reduction to pay grade E–1. The convening authority disapproved the fine, but, otherwise, approved the sentence as adjudged. Before this Court, Appellant initially assigned eleven errors. Two of those assignments were withdrawn by Appellant after they were resolved by this Court's return of the record to the convening authority for corrective action. The remaining nine assignments have been briefed, oral argument has been heard, and the case is now ready for decision.

Three of the assignments relate to the appointment of judges, the use of collateral-duty judges, and the lack of fixed terms of office for judges. These assignments have been previously considered and rejected. *Weiss v. U.S.,* —— U.S. ——, 114 S.Ct. 752, 127 L.Ed.2d 1 (1994), and *U.S. v. Carpenter,* 37 M.J. 291 (CMA 1993), petition for cert. filed, No. 93–676 (U.S. 29 October 1993). Those decisions are dispositive, and the assignments are again rejected.

Two other assignments, which assert that the evidence is insufficient to sustain the convictions of dereliction of duty and larceny, are summarily rejected because we find the evidence both legally and factually sufficient for those offenses. The remaining four assignments will be addressed.

## I

## THAT THE MILITARY JUDGE FAILED TO INSTRUCT THE MEMBERS ON A DEFENSE TO ONE OF THE UN-AUTHORIZED ABSENCES WHICH WAS CLEARLY RAISED BY THE EVIDENCE.

■ Appellant testified with respect to one of the three-day absence offenses that he was absent for the time charged, but believed he had been authorized leave for that period. In support of this contention, he stated that he had asked his supervisor on a Wednesday and Thursday for leave the next week and the supervisor said he would think about it and would talk about it later. Then, according to Appellant, after he was called back to the office from special liberty on Friday to meet with the chaplain and ombudsman, he asked his supervisor again whether he could take all of the next week as leave. Appellant's testimony on this point was as follows:

> My understanding from him was, his last word was, "Fine, you got the leave."
> And I told him, I said, "Well, I'll see you in the following week after my leave is up." And I left, and that particular time I thought I was on leave, so I just went on leave.

R. 1433–34.

The supervisor testified that he had not authorized Appellant leave for the period but confirmed that earlier in the week prior to the charged absence he had discussed with Appellant the possibility of some leave and had said, "I will allow you time. When I get—receive your request, we'll consider it." R. 972. The supervisor explained that when he said he would allow Appellant some time he meant a set period with the supervisor's signature, although he acknowledged that, on another occasion with Appellant, leave papers were completed after leave had been taken and Appellant had called the supervisor at home to obtain approval after the fact. Appellant testified that he had taken leave on at least two occasions without filling out required paperwork beforehand. One such after-the-fact leave authorization was admitted in evidence showing written approval by the supervisor seven days after the leave was taken. Although no leave papers were submitted for the period charged as an unauthorized absence, the supervisor said in response to a question on cross-examination that Appellant "may have perceived he was in a leave status; I knew he wasn't." R. 974.

Despite the testimony and documentary evidence bearing on this matter, no instruction on mistake of fact was requested and none was given *sua sponte* by the judge. Before this Court, Appellant, citing Rule for Courts–Martial 916(j) and the discussion following the rule, submits that mistake of fact is a complete defense to unauthorized absence, if the accused has an honest and reasonable belief that he had permission to be absent, and that the judge had an affirmative duty to instruct on that defense if it was reasonably raised by some evidence. *U.S. v. Watford* 32 M.J. 176, 178 (CMA 1991). Appellant contends that the defense was reasonably raised by the evidence in this case and that the judge's failure to give such an instruction in the face of that evidence requires that we set aside the finding of guilty.

The Government responds with the argument that even if Appellant honestly believed he was authorized leave, the evidence shows that such a belief was not reasonable. The Government says that Appellant's defense to the unauthorized absence rested on a credibility contest between Appellant and his supervisor—either Appellant was given verbal leave authorization by his supervisor or he was not. According to the Government, Appellant failed to produce sufficient evidence to establish the reasonableness of any mistaken belief that he had oral authorization to take a week of leave. For that reason, according to the Government, the judge was not required to instruct the members *sua sponte* on mistake of fact. We disagree.

■ The cases tell us with respect to affirmative defenses that, whenever "some evidence" is presented raising the defense, the judge has a duty to instruct, and that the evidence need not be compelling or convincing beyond a reasonable doubt. The question is whether the evidence is such that if the members gave it credit the defense would be raised. Any doubt whether the evidence raises an affirmative defense should be resolved in favor of the accused. *U.S. v. Van Syoc*, 36 M.J. 461, 464 (CMA 1993); *U.S. v.*

*Jackson,* 12 M.J. 163, 166–167 (CMA 1981); *U.S. v. Steinruck,* 11 M.J. 322, 324 (CMA 1981). Moreover, the Court of Military Appeals said in *U.S. v. Barnes,* 39 M.J. 230, 233 (CMA 1994) that:

> A right to an instruction on an affirmative defense which is reasonably raised by the evidence "is not waived by a defense failure to request such an instruction." [*U.S. v. Taylor,* ] 26 MJ [127,] at 129. Such instruction can only be "affirmatively waived." *See United States v. Strachan,* 35 MJ 362, 364 (CMA 1992), *cert. denied,* [——] U.S. [——], 113 S.Ct. 1595, 123 L.Ed.2d 159 (1993). We cannot affirm appellant's conviction if there is a "reasonable possibility" the judge's error in failing to instruct "might have contributed to the conviction," and we are not persuaded the error was harmless. *United States v. Palacios,* 37 MJ 366, 368 (CMA 1993).

▮ We find that the defense of mistake of fact was reasonably raised by the evidence in this case and that the judge should have given an instruction to the members on that defense even though such an instruction was not requested. Appellant's failure to make such a request did not constitute waiver of the issue. We further find that there was a reasonable possibility that the judge's error in failing to instruct may have contributed to the guilty finding. Accordingly, the error was not harmless, and we must set aside the finding of guilty. We see no useful purpose in returning the record for a rehearing on this offense, however, and in the interest of judicial economy we will dismiss the specification and reassess the sentence.

## II

THAT THE MILITARY JUDGE ERRED BY INSTRUCTING THE MEMBERS, IN EFFECT, THAT THEY COULD NOT FIND APPELLANT GUILTY OF LARCENY OF ANY LESS THAN $1,825 UNDER SPECIFICATION 3 OF CHARGE IV.

▮ After closing for deliberations on the findings, the members returned with a question for the judge: "Can the board substitute specification 3 of Charge IV to state 'steal money of a value of $_____ and wrongfully appropriate $_____,' in lieu of 'steal money of a value of' or 'wrongfully appropriate money of a value of'?" AE LVI. The question was discussed with counsel at an Article 39(a), UCMJ, session out of the presence of the members. At that session the judge, trial counsel, and defense counsel all agreed that a split finding as proposed in the question from the members was not consistent with or supported by the evidence. As a result the judge instructed the members that they could not find both stealing and wrongfully appropriating money in that specification based on the evidence. Defense counsel indicated full agreement with the judge's complete instruction on this matter before it was given, and Appellant registered no objection until now.

Before this Court, Appellant asserts for the first time that the instruction improperly invaded the fact-finding province of the members by limiting them to only three possible findings: guilty of larceny of $1,825, guilty of wrongful appropriation of $1,825, or not guilty of any offense with respect to the $1,825. Appellant contends that the members apparently were considering the possibility that he took money with an intent to return part of it and an intent not to return the other part. He says that they should not have been prevented from making those findings and the larceny conviction should, therefore, be set aside.

The Government, citing *U.S. v. Graves,* 1 M.J. 50, 53 (CMA 1975), responds that the judge properly met her responsibility to frame issues for the court members based on the evidence presented and that she correctly interpreted the evidence when she said, "the evidence does not allow an inference that the Accused intended two different things with two different parts of the remaining balance of eighteen twenty-five dollars." R. 1810. We agree, as did the defense counsel at trial. Appellant's assignment of error in this regard is rejected.

## III

THAT APPELLANT WAS UNFAIRLY PREJUDICED BY IMPROPER SENTENCING ARGUMENT BY THE TRIAL COUNSEL.

▮ Appellant submits that the trial counsel made improper argument to the members

on sentence by quoting from the Bible, thereby, suggesting that there is a higher, religious law to which they should adhere in arriving at an appropriate sentence. Prejudice should be presumed, according to Appellant, but he says little presumption is needed here to conclude that there was prejudice, given the adjudged maximum sentence.

The reference to the Bible that Appellant challenges was at the close of the trial counsel's argument:

> I want to read you a quotation from the Bible and I'm not reading this because it's religious, I'm reading it to you because it's a piece of knowledge that's been carried down through the centuries and it comes from Isaiah 3:10 and it says, "Say to the righteous that it shall be well with them for they shall eat the fruits of their doings."

> Well, Mr. President, Members of the Court, the time has come for Petty Officer Kirk to reap the fruits of the seeds he has sown. Thank you.

R. 1903–04.

Appellant cites *U.S. v. Clifton*, 15 M.J. 26 (CMA 1983) for the proposition that all argument must be based on the evidence of record and inferences that can be drawn from that evidence. He says that trial counsel's argument clearly violated that principle. Appellant also cites *Commonwealth v. Chambers*, 528 Pa. 558, 599 A.2d 630 (1991) and *Cobb v. Wainwright*, 609 F.2d 754, 755 & n. 2 (5th Cir.1980) as authorities condemning argument relying on the Bible or other religious writing. The Government, on the other hand, says the reference to the Bible was not error because the trial counsel pointed out to the members that he was using the quotation, not because it was religious, but because it reflected a common sense perspective of human experience that has survived through the centuries: one reaps what one sows. Moreover, according to the Government, there was no appeal to the religious impulses or beliefs of the members to impose any particular sentence as a result of a transgression of biblical law.

■ While no authority from our higher court that is precisely on point as to biblical argument has been cited by either party, we accept the basic premise of Appellant's citations, a premise apparently accepted by the Government *sub silentio*, that an appeal to religious impulses or beliefs as an independent source of a higher law calling for a particular result would constitute improper argument. That the argument in this case was not of this nature seems clear to us. We agree with the Government's characterization of it as a common sense observation of human experience that has met the test of time. Furthermore, we also agree with the Government that defense counsel's failure to object constituted waiver, and we do not find the biblical quotation by trial counsel to be plain error. Appellant's assignment is rejected.

## IV

## THAT THE APPROVED SENTENCE IN THIS CASE IS INAPPROPRIATELY SEVERE.

■ Appellant contends that the approved sentence of six months confinement, reduction to E–1, and a bad conduct discharge is overly severe for him and the offenses. He says his personnel records paint a picture of a member with over fifteen years of good, honorable service at the time of trial, and he says it is unlikely that the offenses would have occurred if his supervisors had provided proper leadership. He blames those supervisors for placing him in a position in which he was most likely to get into trouble, as custodian of a $2,000 cash imprest fund.

That argument seems to overlook the fact that Appellant, as a petty officer with over fifteen years service, violated the trust his supervisors placed in him. Their proper leadership, or lack thereof, does not account for the crimes committed by him. It was the Appellant who stole the money from the imprest fund and committed the other offenses, not his supervisors. All blame and responsibility rests with Appellant, not with others. Taking into consideration Appellant's record of service and the other matters presented in extenuation and mitigation, we do not find the approved sentence to be overly severe for this accused and his offenses.

## CONCLUSION

Based on the judge's failure to instruct on mistake of fact, as previously discussed, the findings of guilty of Charge II and its specification are set aside and that charge and specification are dismissed. The remaining findings of guilty are affirmed. Upon reassessment of the sentence in light of the affirmed findings of guilty, we are satisfied that no lesser punishment would have been imposed by the court if the dismissed offense had not been considered. We have also determined that the sentence is appropriate for this accused and the remaining offenses. The sentence is correct in law and fact and should be approved. Accordingly, the sentence approved below is affirmed.

Judge WIESE concurs.

O'HARA, Judge (concurring in part and dissenting in part):

I agree with the majority opinion, except as to the finding of error in the military judge's failure to *sua sponte* instruct on the defense of mistake of fact.

The Appellant's defense to the particular unauthorized absence was that it was clearly authorized. Appellant's testimony on this point was:

> My understanding from him was, his last word was, "Fine, you got the leave."
> And I told him, I said, "Well, I'll see you in the following week after my leave is up." And I left, and that particular time I thought I was on leave, so I just went on leave.

The government's case was that although there had been some negotiations between the accused and his supervisor, the necessary permission had not been given nor had it been manifested in any manner indicating clear assent' as suggested by the accused's testimony. During cross-examination, the accused's supervisor did respond in part as follows:

> Q. But Petty Officer Kirk called the office, correct? That was his phone call; he called you?
> A. He called me about 1430 that day and he—he was in the office. He did report about 1620, 1630, there about.

> Q. But he called you because he thought he was in a leave status, correct?
> A. We hadn't—he may have perceived he was in a leave status; I knew he wasn't.
> Q. Okay. He may have perceived that, correct, because of possibly some representations you had made to him?
> A. I can't—I don't know what he was thinking.

The defense's theory was not that the negotiations had left the accused with the impression that he was authorized leave; it was that the negotiations ended with the accused finally getting the necessary permission. The government's case was that although there had been discussions, the supervisor was sure that permission had not been finally granted, especially in the manner suggested by the accused. The supervisor agreed in passing that it was possible that the Appellant could have convinced himself into thinking he had permission, but nothing he said made that perception a reasonable one.

I do not believe the defense of mistake of fact was reasonably raised by the evidence. There must be something more than a witness's conclusory statement that an erroneous perception was in the realm of possibilities, particularly when it is followed by a denial that the witness was the cause of that perception. I agree that the threshold for raising a defense is very minimal, but the evidence in this case did not truly put the question of mistake in issue. Compare *U.S. v. Watford*, 32 M.J. 176 (CMA 1991) (evidence of drinking, but not voluntary intoxication); *U.S. v. Peel*, 29 M.J. 235, 242 (CMA 1989) ("the absence of any defense contention at trial that there was a reasonable mistake of fact" defense to rape); *U.S. v. Taylor*, 26 M.J. 127, 130–31 (CMA 1988) ("[N]o suggestion from counsel that [the rape victim] might not have consented but that the soldiers honestly and reasonably believed she had. Although the defense theory at trial is not dispositive in determining what affirmative defenses have been reasonably raised by the evidence (see *United States v. Steinruck*, [*infra* ] the utter absence of any hint of a mistake defense in any of the defense counsel's many side bar discussions with the mili-

tary judge or his lengthy argument to the members on findings confirm our evaluation of the evidence."); and *U.S. v. Amie,* 7 USC-MA 514, 518, 22 CMR 304, 308 (1957) ("should not have granted the defense request for the mistake of fact instruction"); with *U.S. v. Barnes,* 39 M.J. 230 (CMA 1994) (the defense of inability to return was raised by the government witness's recounting of the accused's excuse for missing work); *U.S. v. Van Syoc,* 36 M.J. 461 (CMA 1993) (the defense of accident raised by the testimony of the accused's wife and another who described the accused's innocent explanation for the baby's injuries); *U.S. v. Steinruck,* 11 M.J. 322 (CMA 1981) (defense of agency was raised in drug sale case); and *U.S. v. Amie, supra* (accused's testimony raised the issue of physical inability to return).

Even if the defense was reasonably raised, I do not believe that the military judge has a *sua sponte* duty to instruct on a defense when that defense is not within the accused's theory of the case and giving such an instruction may have the potential for undermining the accused's case. Alternative defenses can have the affect of weakening all defenses and the defendant's case as a whole. Some alternate defenses can be outright inconsistent, as in this case. In order for the triers of fact here to find a mistake of fact, they would first have to be convinced that the supervisor's testimony was more credible than the accused's. This would fly in the face of the defense position that the accused's testimony clearly demonstrated that he had been given permission by his supervisor to be on leave. To avoid creating such mischief, the trial judge should not be interjecting alternate theories into the defense's case without a defense request to do so. As noted by the Court in *U.S. v. Bowers,* 3 USCMA 615, 619–620, 14 CMR 33, 38–39 (1954):

> * * * A successful appellate system cannot be built if we are to permit an accused to elect one course at the trial level and then, if that turns out disastrously, grant him a reversal so that he may have a chance to retry the case on a theory he previously rejected. Particularly does that principle apply when, by defense tactics, the [military judge] is faced with a dilemma in presenting to the court inconsistent theories. The [military judge] should not be placed in a situation where an accused can claim prejudicial error regardless of which course the [military judge] pursues, and this case seems to pose that problem. On the one hand, if he instructs on a theory which is unwanted and a verdict of a lesser included offense is returned, cannot the accused justly complain that the [military judge] injected an issue not raised by him? Is the accused not, if he so desires, entitled to limit the findings of the court to only guilty or not guilty of the principal offense? On the other hand, if the [military judge] does not so instruct, is the accused entitled to reversal because lesser included offenses were reasonably raised by the evidence? We believe [the] accused is the one who must prevent that dilemma. If he does not want an inconsistent theory injected into the deliberations of the court-martial, he may make that election by stating that he does not want any instructions other than those given, as did counsel in this case. If, however, he desires to take a chance on a verdict of a lesser offense, he should specifically request appropriate instructions so that he cannot complain if they are given.

And *U.S. v. Amie, supra* 22 CMR at 308 ("An instruction on obtaining money in payment of a debt by false pretenses would have been *inconsistent with the defense's theory* and under those circumstances, no instruction was required." Emphasis added.). See also *U.S. v. Barnes, supra* 39 M.J. at 232 ("Appellant was 'entitled' to have instructions on *'any defense theory* for which there is any foundation in the evidence'." Citing *U.S. v. Amie, supra* 22 CMR at 308 (added emphasis omitted; other emphasis added).); *U.S. v. Van Syoc, supra* 36 M.J. at 465 ("[T]he error was prejudicial because it *deprived the defense* of an instruction on *their theory of the case.*" Emphasis added.); accord *U.S. v. Taylor, supra* (defense counsel's failure to fully appreciate the theory of the case does not relieve the judge of the duty to instruct on a defense reasonably raised). But see *U.S. v. Steinruck, supra* 11 M.J. at 324 ("If the defense of agency is reasonably raised, the military judge has a duty to instruct the

factfinders on it, *regardless of defense theories or requests.* [Emphasis added.] *United States v. Stewart*, 20 U.S.C.M.A. 300, 43 C.M.R. 140 (1971) [the accused's request for agency defense instruction refused by the military judge]. See *United States v. Sawyer*, 4 M.J. 64 (C.M.A.1977) [the military judge's instructions on self-defense were prejudicially inadequate]; *United States v. Graves*, 1 M.J. 50 (C.M.A.1975) [defense's failure to request a voluntariness instruction on the accused's admissions not waived]") and (the dissent noting that the defenses "can be factually inconsistent").

I agree with the majority that even if the military judge erred in not instructing on mistake of fact, the dismissal of a minor unauthorized absence does not warrant reassessment of the sentence downward in light of the other, more serious offenses remaining. I also agree that there was no error in not permitting the larceny offense to be split into two offenses; that a little literary flourish in final arguments, even if its an allusion to the Bible, is not impermissible; and that the sentence is not too severe under the circumstances.