# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

## UNITED STATES

v.

## Senior Airman JORY D. HODGE
### United States Air Force

## ACM 38563

## 23 March 2015

Sentence adjudged 13 January 2014 by GCM convened at Grand Forks Air Force Base, North Dakota.  Military Judge:  Natalie D. Richardson (sitting alone).

Approved Sentence:  Dishonorable discharge, confinement for 20 years, forfeiture of all pay and allowances, and reduction to E-1.

Appellate Counsel for the Appellant:  Major Christopher D. James and Brian L. Mizer, Esquire.

Appellate Counsel for the United States:  Captain Meredith L. Steer and Gerald R. Bruce, Esquire.

Before

HECKER, WEBER, and TELLER
Appellate Military Judges

OPINION OF THE COURT

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.

HECKER, Senior Judge:

A general court-martial, composed of a military judge alone, convicted the appellant pursuant to his pleas of rape, forcible sodomy, assault consummated by a battery, burglary, and communicating threats, in violation of Articles 120, 125, 128, 129, and 134, UCMJ, 10 U.S.C. §§ 920, 925, 928, 929, 934.  The military judge sentenced the appellant to a dishonorable discharge, confinement for 34 years, total forfeiture of pay and allowances, and reduction to E-1.  Pursuant to a pretrial agreement, the convening

authority lowered the confinement to 20 years and approved the remainder of the sentence as adjudged.

On appeal, the appellant argues (1) he was denied due process of law at his sentencing proceeding when a central theme of the Government's sentencing case was the impact of the appellant's crimes on the religious faith of the victim, her husband, and their church; (2) trial counsel's sentencing argument constituted prosecutorial misconduct and unfairly prejudiced the appellant; and (3) two of the specifications are multiplicious.

*Background*

While attending an on-base party during the evening of 9 August 2013, the appellant consumed beer and vodka and became rambunctious. Another party attendee arranged for Security Forces to give him a courtesy ride to his on-base home shortly after midnight. The appellant entered his own house but later left and broke in to a nearby house of a co-worker. The appellant knew the co-worker was deployed, and had been at the house several months earlier to help move furniture.

The appellant drove to the house and entered through a kitchen window. He went upstairs to the master bedroom and stood by the bed, where the co-worker's wife was asleep. She awoke and screamed for him to leave her house. He responded by repeatedly striking her in the face with his closed fist, causing injuries. For this conduct, the appellant was convicted of burglary and assault consummated by a battery.

The woman begged the appellant to stop but he continued, removing her clothes and his pants. He yelled that he would kill her if she did not have sexual intercourse with him, placing her in fear that she would be subjected to death or grievous bodily harm. The appellant then engaged in sexual intercourse with her. He also forcibly penetrated her mouth with his penis after hitting her in the face and again threatening her. The appellant forced her to engage in sodomy and sexual intercourse multiple times during the time he remained in her house. Throughout this time, he made repeated threats and vulgar comments and asked her questions about her personal life. For this, the appellant was convicted of forcible sodomy, two specifications of rape, and two specifications of wrongfully communicating a threat.

After he left, the woman contacted law enforcement at 0300 hours to report the assault. Although she could not identify who attacked her, the information she provided to investigators led them to the appellant. Biological evidence collected during a sexual assault examination was later matched to the appellant. This examination also revealed that she had suffered tearing in her vaginal area and severe bruising on her cervix.

The victim in this case was a member of the Church of Jesus Christ of Latter Day Saints. As part of her victim impact testimony during the sentencing phase of the trial, trial counsel asked her how the incident affected her faith. She replied, "[T]here are sometimes where I feel really strongly touched by the spirit, and that . . . my savior is with me. And then there are so many other times where I just wonder what did I do wrong? . . . [W]as I not good enough?" She testified the assault had caused her to stop performing her duties with the church's Achievement Day program because she did not feel "clean or pure enough to be around" the 8–11-year-old girls and did not want to "ruin or "taint" them. She also felt that she was not "clean enough or good enough, righteous enough" to wear her sacred garments (which the appellant had removed during the assault).

The victim's husband was also asked how the crimes affected his faith. He described how he placed a blessing on his home before he deployed so it could be "a place where the spirit of Christ dwells, a place of peace and a place of comfort" and also blessed his family so they would be protected in his absence. After this incident, he felt "betrayed by [his] heavenly father" and stopped going to church. When trial counsel asked how he felt about the appellant violating the church tenant prohibiting sexual relations outside of marriage, the husband said he "felt that there was a stain on [their] marriage, that [he] didn't have a right to be sexually attracted to her anymore, because it wasn't fair that someone had forced themselves onto her. He also stated that the accused's decision to take away his wife's free will and ability to choose "is akin to saying that God's plan doesn't matter. You are not important to him."

The Government also called the bishop for the ward (congregation) where the victim and her husband worshiped. Following a relevancy objection, the military judge allowed the witness to testify about the "significance of the victim's faith in this case and the religious aspects in it." The bishop then explained that a subset of church members receive sacred garments when they pledge to live by a "higher law and a higher standard" and are required to treat them with respect. He also explained that he had previously selected the victim to work with the young girls because he thought they would benefit from her leadership and outgoing nature.

In sentencing argument, trial counsel stated:

> Now we know that he targeted [the victim]. We don't know why he did that. We don't know if it was because he knew about her or her husband or their faith. But the fact is, they do have faith which his actions have negatively affected in a serious way. Individually and faith-based, the impact of these heinous crimes is immense.

ACM 38563

The appellant argues he was denied due process of law when the "central theme" of the Government's sentencing case was the impact of the appellant's crimes on the religious faith of the victim, her husband, and their church. In making this argument, he cites to federal cases that discuss the constitutionally impermissible use of the defendant's religion in fashioning a sentence. He also argues the President has limited the use of religion as a matter in aggravation to circumstances where the accused has targeted the victim based on her religion. *See* Rule for Courts-Martial (R.C.M.) 1001(b)(4) ("[E]vidence in aggravation may include evidence that the accused intentionally selected any victim or any property as the object of the offense because of the actual or perceived . . . religion . . . of any person."). The appellant also contends trial counsel's reference to the victim's faith was improper and amounted to prosecutorial misconduct.

At trial, defense counsel made a relevancy objection during the bishop's testimony, but the military judge allowed trial counsel to continue with the presentation of evidence on the victim's faith. The defense did not object to this evidence as being improper aggravation evidence or as being unduly prejudicial under the balancing test of Mil. R. Evid. 403. Nor did trial defense counsel object when trial counsel referred to this issue during sentencing argument. Under those circumstances, we review these issues for plain error. Under a plain error analysis, the appellant must show that: "(1) there was error; (2) the error was plain or obvious; and (3) the error materially prejudiced a substantial right of the [appellant]." *United States v. Girouard*, 70 M.J. 5, 11 (C.A.A.F. 2011); *see also United States v. Hardison*, 64 M.J. 279, 281 (C.A.A.F. 2007); *United States v. Fletcher*, 62 M.J. 175, 179 (C.A.A.F. 2005).

First, we disagree that the religion-based impact of the appellant's crime was a "central theme" of the Government's sentencing case. Although evidence on this topic was presented by trial counsel, this subject was not a primary focus of the Government's sentencing case. The victim and her husband primarily testified about the impact of the appellant's crimes on other aspects of their lives. Further, trial counsel's reference to the couple's religion was found in a short paragraph of a six-page sentencing argument, most of which focused on the deliberate and protracted violence the appellant inflicted on the victim.

Second, we do not find plain error in the admission of this evidence or in the argument relating to it. There are some instances where religion cannot be admitted or considered at a court-martial, none of which are implicated in the appellant's case. For example, Mil. R. Evid. 610 states "[e]vidence of the beliefs or opinions of a witness on matters of religion is not admissible for the purpose of showing that by reason of their nature the credibility of the witness is impaired or enhanced." Also, it would be improper to consider an accused's religion and/or religious fealty as a sentencing factor, or for a

military judge to bring her personal religious beliefs into the sentencing process. *See United States v. Green*, 64 M.J. 289, 293–94 (C.A.A.F. 2007).

In the sentencing context, however, in finding that the Eighth Amendment[1] did not bar the introduction of victim impact evidence and prosecutorial argument on that subject, the Supreme Court has reversed prior precedent which had held such evidence, including a victim's religiosity, was barred. *See Payne v. Tennessee*, 501 U.S. 808, 827 (1991). Thus, "a State may properly conclude that for the jury to assess meaningfully the defendant's moral culpability and blameworthiness, it should have before it at the sentencing phase evidence of the specific harm caused by the defendant." *Id. See also United States v. Murphy*, 36 M.J. 1137 (A.C.M.R. 1993) (holding that the appellant's complaint about victim-impact evidence of a murder victim's deep religious beliefs was rendered moot by the Supreme Court's decision in *Payne*), *rev'd on other grounds*, 50 M.J. 4 (C.A.A.F. 1998); *see also United States v. Bernard*, 299 F.3d 467, 478 (5th Cir. 2002) (allowing testimony that two murder victims were youth ministers in part because religion played a vital role in their lives); *United States v. Mitchell*, 502 F.3d 931, 989–90 (9th Cir. 2007) (holding that the Government could introduce evidence about Navajo religious tradition to show that a murder victim's family no longer had access to its primary source of religious knowledge); *United States v. Nelson*, 347 F.3d 701, 714 (8th Cir. 2003) (noting that religious references can be included in admissible victim-impact evidence).

In light of this, we find the presentation of this evidence is permissible under R.C.M. 1001(b)(4), which authorizes the Government to introduce evidence "as to any aggravating circumstances directly relating to or resulting from the offenses . . . [which] includes, but is not limited to, evidence of financial, social, psychological, and medical impact on or cost to" the victim and was not unduly prejudicial. *See United States v. Wilson*, 35 M.J. 473 (C.M.A. 1992) (noting that R.C.M. 1001(b)(4) allows impact evidence that shows the crimes' effect on the victim, the victim's family, and the close community). The Rule's inclusion of the language cited by the appellant ("[E]vidence in aggravation may include evidence that the accused intentionally selected any victim . . . as the object of the offense because of the actual or perceived . . . religion . . . of any person.") does not mean this is the only way religion can be properly admissible under the rule. *See Manual for Courts-Martial, United States*, app. 21 at A21-73 (2012 ed.) (stating the rule was amended to recognize that evidence an offense was a hate crime "may also be presented to the sentencing authority" and that "hate crime'' motivation is admissible in the court-martial presentencing procedure").

Here, the victim and other witnesses testified about the negative impact the appellant's crimes had on an aspect of her life that was important to her. The fact that this aspect of her life involved religion does not, in our view, make it impermissible

---

[1] U.S. CONST. Amend. VIII.

aggravation evidence.  Furthermore, the introduction of this evidence was not "so unduly prejudicial that it renders the trial fundamentally unfair." *Payne*, 501 U.S. at 825.   The evidence was only a small portion of the overall sentencing case, and the appellant was sentenced by a military judge

Similarly, we find trial counsel's argument did not constitute misconduct and find no plain error.  During sentencing argument, trial counsel is entitled "to argue the evidence of record, as well as all reasonable inferences fairly derived from such evidence." *United States v. Baer*, 53 M.J. 235, 237 (C.A.A.F. 2000).  Trial counsel's argument must also be viewed within the context of the entire court-martial, not isolated words or phrases.  *Id.* at 238 (citing *United States v. Young*, 470 U.S. 1, 16 (1985)). When considered in its entirety, the argument of trial counsel did not "unduly . . . inflame the passions or prejudices" of the sentencing authority.  *United States v. Marsh*, 70 M.J. 101, 102 (C.A.A.F. 2011) (quoting *United States v. Schroeder*, 65 M.J. 49, 58 (C.A.A.F. 2007)) (alteration in original) (internal quotation marks omitted); *United States v. Kirk*, 41 M.J. 529, 533 (C.G. Ct. Crim. App. 1994) (holding an appeal to the religious impulses or beliefs of the sentencing authority as an independent source of a higher law calling for a particular result would be improper argument).

*Trial Counsel's Sentencing Argument*

In addition to trial counsel's comment on the victim's religion discussed above, the appellant also claims another aspect of trial counsel's argument was improper and amounted to prosecutorial misconduct.  Trial counsel argued:

> And you'll see in the defenses [sic] package of extenuation and mitigation lots of pictures.  I have one picture.  I have a picture of [the two-year-old daughter of the victim].  What does [her mother] tell [her], when [she] asks her someday whether monsters are real?  For most parents, that's an easy answer.  Monsters aren't real.  They're figments of nightmares.  They don't live in the closet.  They don't hide under the bed.  They don't come out in the middle of the night and get you.  They are not real. But to [the victim], monsters are real, because her monster is right there.

> He lives in her nightmares, then, and into the future. She can't tell her daughter right now that monsters aren't real. But maybe, maybe after today, maybe after this court imposes a sentence, she will be able to say, maybe monsters aren't real, but maybe there are bad people who do bad things. Maybe it's your family and your friends and your community [sic] protect you from those bad people that do bad things.

> And maybe we will be able to tell [the daughter], we will be able to tell her friends and our friends, we will be able to tell the Grand Forks Community and the Air Force Community as a whole, that the military justice system is part of that protection, that it both protects and imposes judgment on those who commit the most heinous of crimes and those bad people that do heinous things. Your sentence to include reduction to E-1, obviously; total forfeitures, obviously; dishonorable discharge, obviously, but also a term of imprisonment between 25 years and life will send just that message to those people.

Trial defense counsel did not object to this argument. On appeal, however, the appellant argues that this aspect of trial counsel's argument was improper because he called the appellant a "monster," and displayed a photograph of the victim's two-year-old daughter (who was sleeping in a downstairs bedroom when her mother was assaulted) while arguing the appellant should be severely punished so that the victim could tell her child "monsters aren't real."

As discussed, supra, when the defense does not object to arguments of trial counsel, we review for plain error. *Fletcher*, 62 M.J. at 179. The lack of a defense objection is relevant to a determination of prejudice because it is "some measure of the minimal impact of a prosecutor's improper comment." *United States v. Gilley*, 56 M.J. 113, 123 (C.A.A.F. 2001) (quoting *United States v. Carpenter*, 51 M.J. 393, 397 (C.A.A.F. 1999)) (internal quotation marks omitted).

"Disparaging comments are . . . improper when they are directed to the defendant himself" and constitute "more of a personal attack on the defendant than a commentary on the evidence." *Fletcher*, 62 M.J. at 182–183. We review the context of the entire court-martial to determine whether or not comments are fair. *Gilley*, 56 M.J. at 121 (citations omitted). Here, trial counsel referred to the appellant as "the victim's monster." To the extent that is a comment directed to the appellant himself in this context, we find the reference was not outside the bounds of fair comment or beyond the norm. *Cf. United States v. Erickson*, 63 M.J. 504 (A.F. Ct. Crim. App. 2006) (holding that comparisons to Adolph Hitler, Saddam Hussein, Osama bin Laden, and the devil were outside bounds); *United States v. McPhaul*, 22 M.J. 808 (A.C.M.R. 1986) (noting references to appellant as degenerate scum, slavering animal, subhuman, and miserable human being were based on evidence in the record and were fair comment). We find trial counsel's use of that term is not outside the norms of fair comment in a court-martial where the appellant has pled guilty to rape, forcible sodomy, assault, burglary, and communicating threats as described in detail above.

The appellant also contends trial counsel improperly argued for a harsh sentence to prove to the appellant's child that "monsters aren't real" and to send a message to her, the base community, and the Air Force community. We find this argument by trial counsel does not constitute plain error. Trial counsel essentially argued that the military justice system serves a public role in protecting the community and imposing judgment on those who commit crimes. A trial counsel's sentencing argument can refer to generally accepted sentencing philosophies, including the protection of society from the wrongdoer and general deterrence. *United States v. Frey*, 73 M.J. 245, 249 (C.A.A.F. 2014). Accordingly, his argument here was not error, plain or otherwise.

Finally, the sentencing authority in this case was a military judge, sitting alone. Even if trial counsel's comments were improper, military judges are presumed to know the law and to follow it absent clear evidence to the contrary. *United States v. Erickson*, 65 M.J. at 225 (citing *United States v. Mason*, 45 M.J. 483, 484 (C.A.A.F. 1997)). Here, there is no evidence to rebut that presumption. We do not find the sentence imposed by the military judge to be clear evidence that she considered any improperly admitted evidence or argument, and we are confident that he was sentenced on the basis of the evidence alone. *See Erickson*, 65 M.J. at 224.

*Multiplicity*

The appellant contends the forcible sodomy specification is multiplicious with one of the rape specifications, resulting in him being improperly convicted of both offenses for the single act of penetrating the victim's mouth with his penis.[2] He asks this court to dismiss one of the specifications.

The appellant entered into a pretrial agreement which included a defense-proposed provision that he "waive all waiveable motions." The military judge explained this meant he was "giving up the right to make any motion, which by law, is given up when you plead guilty" and that it precludes any appellate court from "having the opportunity to determine if you are entitled to any relief based upon those motions." Trial defense counsel told the military judge that, but for the pretrial agreement, she would have made a multiplicity motion regarding these specifications. The appellant indicated he had discussed this motion and the waiver provision with his defense counsel, understood their meaning and effect, and had voluntary entered into the pretrial agreement in order to get the benefit of his pretrial agreement. When asked by the military judge, defense counsel

---

[2] The rape specification alleges the appellant caused his penis to penetrate the victim's mouth by placing her in fear that she would be subjected to death or grievous bodily harm, while the sodomy specification stated he committed the act by force and without consent. During the guilty plea inquiry into the rape specification, the appellant described penetrating the victim's mouth with his penis shortly after he threatened to kill the victim and admitted she engaged in the activity because she was in fear of death or grievous bodily harm. While discussing the sodomy specification, the appellant described a second incident of penetration that occurred after he used his hand to forcefully push the victim's open mouth onto his penis.

indicated the multiplicity motion would not have been based on constitutional grounds. She also agreed with the military judge that this motion was "waived if not made before the entering of pleas."

In light of this pretrial agreement provision and express waiver of the multiplicity issue, we find the appellant has intentionally waived a known right, which extinguished his right to raise this issue on appeal. *United States v. Gladue*, 67 M.J. 311, 313–14 (C.A.A.F. 2009).

*Conclusion*

The approved findings and the sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the approved findings and the sentence are **AFFIRMED**.

FOR THE COURT

STEVEN LUCAS
Clerk of the Court

ACM 38563