UNITED STATES, Appellee

v.

Raymond L. GIROUARD, Staff Sergeant
U.S. Army, Appellant

No. 10-0642

Crim. App. No. 20070299

United States Court of Appeals for the Armed Forces

Argued January 12, 2011

Decided April 14, 2011

RYAN, J., delivered the opinion of the Court, in which
EFFRON, C.J., and ERDMANN and STUCKY, JJ., joined.  BAKER,
J., filed a separate dissenting opinion.


Counsel

For Appellant:  Tillman J. Finley, Esq. (argued);
Lieutenant Colonel Jonathan F. Potter, Captain A. Jason
Nef, and Daniel Marino, Esq. (on brief).

For Appellee:  Major Adam S. Kazin (argued); Colonel
Michael E. Mulligan and Major Christopher B. Burgess (on
brief); Lieutenant Colonel Jan E. Aldykiewicz.


Military Judge:  Theodore E. Dixon


THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.

United States v. Girouard, No. 10-0642/AR

Judge RYAN delivered the opinion of the Court.

Contrary to his pleas, Appellant was found guilty by a panel of officer and enlisted members sitting as a general court-martial and convicted of conspiracy to obstruct justice, obstruction of justice, violating a lawful general order, and three specifications of negligent homicide,[1] in violation of Articles 81, 92, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 881, 892, 934 (2006). Appellant was found not guilty of conspiracy to commit premeditated murder and premeditated murder, under Articles 81 and 118, UCMJ, 10 U.S.C. §§ 881, 918 (2006). The adjudged sentence included a dishonorable discharge, confinement for ten years, forfeiture of all pay and allowances, and reduction to Private E-1. Except for the forfeitures, the convening authority approved the adjudged sentence and also gave Appellant 368 days of confinement credit against the approved confinement.

The United States Army Court of Criminal Appeals (ACCA) affirmed the findings and sentence on April 23, 2010. See United States v. Girouard, No. ARMY 20070299, 2010 CCA LEXIS 49, 2010 WL 3529415 (A. Ct. Crim. App. Apr. 23, 2010). Appellant petitioned for reconsideration on May

_____

[1] Relevant to the granted issue, Appellant was charged with three specifications of premeditated murder, in violation of Article 118, UCMJ, and not negligent homicide.

2

19, 2010, arguing that this Court's April 19, 2010, decision in United States v. Jones, 68 M.J. 465 (C.A.A.F. 2010), prohibited his conviction for negligent homicide as a lesser included offense (LIO) of premeditated murder. The ACCA granted the motion for reconsideration, but denied relief on May 25, 2010. United States v. Girouard, No. ARMY 20070299 (A. Ct. Crim. App. May 25, 2010) (order).

Appellant filed a petition for review on July 23, 2010, and on September 24, 2010, we granted Appellant's petition of the following issue:

> WHETHER THE ARMY COURT OF CRIMINAL APPEALS ERRED IN FAILING TO DISMISS APPELLANT'S NEGLIGENT HOMICIDE CONVICTION PURSUANT TO THIS COURT'S OPINION IN UNITED STATES V. JONES, 68 M.J. 465 (C.A.A.F. 2010), BECAUSE NEGLIGENT HOMICIDE IS NOT A LESSER INCLUDED OFFENSE TO MURDER.

United States v. Girouard, 69 M.J. 277 (C.A.A.F. 2010) (order granting review).

We conclude that the ACCA erred in failing to dismiss Appellant's negligent homicide conviction: negligent homicide is not a lesser included offense of premeditated murder and under the facts of this case the conviction constitutes plain error.

I.

The following facts are undisputed. On May 9, 2006, Third Squad –- including Staff Sergeant Raymond Girouard

United States v. Girouard, No. 10-0642/AR

(Appellant) and Third Squad members Sergeant Leonel Lemus (SGT Lemus), Specialist William Hunsaker (SPC Hunsaker), Specialist Justin Graber (SPC Graber), Specialist Jeremy Moore (SPC Moore), Private First Class Corey Clagett (PFC Clagett), and Private First Class Bradley Mason (PFC Mason) -- participated in an air assault of an island in Iraq reported to be an Al Qaeda training camp occupied by terrorists.

In the course of carrying out the assault, Third Squad was ordered to secure a house (H1) on the island. Led by Appellant, Third Squad raided H1, killing one military-age male (MAM) and detaining three others, MAM 1, MAM 2, and MAM 3, in the process. The detainees were secured with zip ties,[2] and placed face down outside of H1.

Part of Third Squad then moved to secure a second house (H2) located nearby. As they approached H2, an MAM (MAM 4) emerged shielding himself with a baby. Appellant immediately took the baby out of MAM 4's hands, and MAM 4 was detained. Later, out of the sight of Appellant, SGT Lemus and SPC Hunsaker began to physically beat MAM 4. When Appellant realized what was going on, he ordered them

---

[2] Zip ties are plastic bands used to fasten hands or objects together.

to stop.  After finishing the search of H2, Third Squad, escorting MAM 4, returned to H1.

While processing the detainees back at H1, SPC Hunsaker expressed his desire, in Appellant's presence, to kill the detainees.  SPC Hunsaker stated: "We should kill these mother fuckers.  There [sic] G-D terrorists. These dudes are bad.  They are using the women for sex, and to cook for them and everything."  Soon thereafter, Appellant convened a meeting with the squad members.  At that meeting Appellant assigned SPC Hunsaker and PFC Clagett the task of guarding MAM 1, MAM 2, and MAM 3 in the courtyard of H1. After the meeting, SGT Lemus, SPC Graber, PFC Mason, and Appellant (escorting MAM 4) separated from SPC Hunsaker and PFC Clagett, leaving them alone with MAM 1, MAM 2, and MAM 3.

They proceeded to cut the detainees' restraints and told them to run.  As they ran, SPC Hunsaker and PFC Clagett fired on them, killing MAM 1 and MAM 2 immediately, and mortally wounding MAM 3.[3]  After hearing the gunshots, Appellant returned to the courtyard and discovered that SPC

---

[3] Shortly after the shooting, a medic came to look at the detainees' bodies.  At that time, MAM 3 was still breathing, but the medic noted that "[t]here's nothing I can do for him."  SPC Graber proceeded to fire his M4 rifle into MAM 3's head to, in his own words, "ease the suffering."

Hunsaker and PFC Clagett had murdered MAM 1, MAM 2, and MAM 3. Appellant, SPC Hunsaker, and PFC Clagett made a split-second decision to fabricate a story -- that the detainees had attempted to escape, and were shot in the process -- to cover up what had actually happened.

The fabricated story, however, did not hold up for long. A government investigation discovered the truth: that SPC Hunsaker and PFC Clagett had in fact freed the detainees and then unlawfully shot them. According to the version of the events provided by SPC Hunsaker and PFC Clagett, Appellant had ordered them to murder the detainees at the group meeting held in H1. SPC Hunsaker and PFC Clagett subsequently pled guilty to premeditated murder and conspiracy to commit premeditated murder and received life sentences. In exchange for their agreement to testify against Appellant during his court-martial, SPC Hunsaker and PFC Clagett's life sentences were reduced to eighteen years, with the possibility of parole in six years.

The Government then sought to hold Appellant liable both for the detainee killings themselves and for assisting Hunsaker and Clagett in the cover-up of the killings, charging Appellant with, inter alia, premeditated murder and conspiracy to commit premeditated murder. At Appellant's court-martial, the Government's theory of the

6

case was that Appellant ordered SPC Hunsaker and PFC Clagett to kill the detainees during the H1 squad meeting. This claim was based, in part, on the testimony of SPC Hunsaker and PFC Clagett secured by the Government as part of their plea deal. Defense counsel's theory, however, was that SPC Hunsaker and PFC Clagett committed the killings of their own volition. Appellant testified at trial, and denied ever having ordered SPC Hunsaker and PFC Clagett to kill the detainees.

At the conclusion of the evidence at trial, the military judge held a Rule for Courts-Martial (R.C.M.) 802 conference with Government and defense counsel to discuss findings instructions. During the R.C.M. 802 conference, trial defense counsel requested an instruction on the LIO of negligent homicide, and filed a brief with the trial court arguing that Appellant was entitled to such an instruction. During a subsequent Article 39(a), UCMJ, session, trial defense counsel reiterated her request for the negligent homicide instruction, and the military judge agreed to the defense request. Notwithstanding the instruction, however, the Government's case throughout trial was premised upon a theory of premeditated murder, and not negligent homicide. Negligent homicide was never addressed by either of the parties before the close of

7

evidence, and was not stressed by either side during closing arguments. Relevant to the granted issue, Appellant was acquitted of the premeditated murder and conspiracy to commit premeditated murder charges, but was convicted of negligent homicide.[4]

Appellant appealed the decision to the ACCA, arguing inter alia, that "the government failed to prove appellant guilty beyond a reasonable doubt of negligent homicide by failing to offer any evidence of the standard of care, any evidence appellant violated that standard, or any evidence any conduct by appellant proximately caused the deaths of the military detainees." Girouard, 2010 CCA LEXIS 49, at *15, 2010 WL 3529415, at *5. The ACCA unanimously affirmed the findings of guilty and sentence as approved by the convening authority. Girouard, 2010 CCA LEXIS 49, at *20, 2010 WL 3529415, at *7.

However, four days before the ACCA decision, on April 19, 2010, this Court's decision in United States v. Jones,

---

[4] There is nothing in the record to suggest that the court-martial was improperly convened or that the charges on the charge sheet before the court-martial were not properly referred. R.C.M 201(b)(3). The problem is not, as the dissent suggests, jurisdictional. R.C.M. 603 recognizes that major changes or amendments may be made to a charge and specification absent objection by the accused. In the present case, where the accused did not object to the change in the charge, the change is tested for plain error.

United States v. Girouard, No. 10-0642/AR

68 M.J. 465, 467 (C.A.A.F. 2010), was released where we returned to the elements test approach to defining lesser included offenses. Id. at 470. Based on Jones, Appellant petitioned for reconsideration arguing that negligent homicide was not an LIO of premeditated murder under the elements test. Specifically, Appellant asserted that negligent homicide requires two elements that premeditated murder does not: (1) "that the act or failure to act of the accused which caused the death amounted to simple negligence," and that (2) "under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces." Manual for Courts-Martial, United States, pt. IV, para. 85.b. (2008 ed.). The ACCA issued a one-sentence per curiam order denying Appellant's petition for reconsideration. United States v. Girouard, No. ARMY 20070299 (A. Ct. Crim. App. May 25, 2010) (order).

Appellant then filed a petition for review on July 23, 2010, and on September 24, 2010, we granted Appellant's petition. Girouard, 69 M.J. 277 (order granting review).

II.

Article 79, UCMJ, provides the statutory authority for a military judge to instruct on, and for an appellate court

9

to affirm, an LIO.  Article 79, UCMJ, 10 U.S.C. § 879 (2006) (permitting an accused to "be found guilty of an offense necessarily included in the offense charged"). Whether an offense is an LIO is a question of law that is reviewed de novo.  United States v. Miller, 67 M.J 385, 387 (C.A.A.F. 2009).  In determining whether an offense is an LIO, this Court applies the elements test.  United States v. Jones, 68 M.J. 465, 469-70 (C.A.A.F. 2010) (citing Schmuck v. United States, 489 U.S. 705, 716 (1989)); see United States v. Alston, 69 M.J. 214, 216 (C.A.A.F. 2010) (noting that the elements test encompasses ordinary principles of statutory construction, "'permit[ing] lesser offense instructions only in those cases where the indictment contains the elements of both offenses,' and as a result 'gives notice to the defendant that he may be convicted on either charge'") (quoting Schmuck, 489 U.S. at 718).

Appellant was charged with premeditated murder under Article 118, UCMJ, which requires: (1) a death; (2) that the accused caused the death by an act or omission; (3) the killing was unlawful; and (4) at the time of the killing, the accused had a premeditated design to kill.  MCM pt. IV, para. 43.b.(1).  Appellant was convicted, however, of negligent homicide, Article 134, UCMJ, which requires:  (1)

10

that a certain person is dead; (2) that this death resulted from an act or failure to act of the accused; (3) that the killing by the accused was unlawful; (4) that the accused's act or failure to act that caused the death amounted to simple negligence; and (5) that, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces. MCM pt. IV, para. 85.b.

Assuming without deciding that simple negligence is subsumed within premeditation, it is nonetheless apparent that negligent homicide contains additional elements that are not elements of premeditated murder: the terminal elements of Article 134, UCMJ, prejudice to good order or service discredit. MCM pt. IV, para. 85.b.; see Miller, 67 M.J. at 388-89 (rejecting the notion that clauses 1 and 2 of Article 134, UCMJ, are per se included in every enumerated offense, and overruling cases that held to the contrary); Jones, 68 M.J. at 471 (same). Therefore, negligent homicide is not an LIO of premeditated murder.[5]

---

[5] This problem could be avoided by charging in the alternative and seeking to have ordinary criminal offenses, such as negligent homicide, kidnapping, etc., enacted via statute without the terminal elements of Article 134, UCMJ.

United States v. Girouard, No. 10-0642/AR

The Government appears to concede this point, but argues that it is immaterial to the outcome of this case. Brief of Appellee at 14, United States v. Girouard, No. 10-0642 (C.A.A.F. Nov. 23, 2010). In the Government's view, Appellant asked that the members be instructed on negligent homicide and therefore either waived or invited the error. Alternatively, the Government asserts that Appellant was not prejudiced by his conviction for negligent homicide because he was on notice. We deal with these assertions in turn.

A.

"Deviation from a legal rule is 'error' unless the rule has been waived." United States v. Olano, 507 U.S. 725, 732-33 (1993). Waiver is the "intentional relinquishment or abandonment of a known right." United States v. Harcrow, 66 M.J. 154, 156 (C.A.A.F. 2008) (quoting United States v. Olano, 507 U.S. 725, 732-33 (1993)). "Whether a particular right is waivable; whether the defendant must participate personally in the waiver; whether certain procedures are required for waiver; and whether the defendant's choice must be particularly informed or voluntary, all depend on the right at stake." Id. (quoting Olano, 507 U.S. at 733).

United States v. Girouard, No. 10-0642/AR

The rights at issue in this case are constitutional in nature. The Fifth Amendment provides that no person shall be "deprived of life, liberty, or property, without due process of law," U.S. Const. amend. V, and the Sixth Amendment provides that an accused shall "be informed of the nature and cause of the accusation," U.S. Const. amend. VI. Both amendments ensure the right of an accused to receive fair notice of what he is being charged with. See Apprendi v. New Jersey, 530 U.S. 466, 476 (2000); Cole v. Arkansas, 333 U.S. 196, 200 (1948); see also Jones, 68 M.J. at 468. But the Due Process Clause of the Fifth Amendment also does not permit convicting an accused of an offense with which he has not been charged. See United States v. Marshall, 67 M.J. 418, 421 n.3 (C.A.A.F. 2009) (noting the government's dual due process obligations of fair notice and "proof beyond a reasonable doubt of the offense alleged" (emphasis added)). As the Supreme Court explained in Patterson v. New York, "the Due Process Clause requires the prosecution to prove beyond a reasonable doubt all of the elements included in the definition of the offense of which the defendant is charged." 432 U.S. 197, 210 (1977) (emphasis added); see also United States v. Wilcox, 66 M.J. 442, 448 (C.A.A.F. 2008) ("To satisfy the due process requirements of the Fifth Amendment, the Government must

13

prove beyond a reasonable doubt every element of the charged offense." (emphasis added)). Thus, when "all of the elements [are not] included in the definition of the offense of which the defendant is charged," then the defendant's due process rights have in fact been compromised. See Patterson, 432 U.S. at 210. "[T]here is a presumption against the waiver of constitutional rights, and for a waiver to be effective it must be clearly established that there was an intentional relinquishment or abandonment of a known right or privilege." Harcrow, 66 M.J. at 157 (citations and quotations omitted).

Therefore, in the case at bar, the rights at stake are Appellant's constitutional rights to notice and to not be convicted of a crime that is not an LIO of the offense with which he was charged.[6] U.S. Const. amend. V; U.S. Const. amend. VI. Appellant could not have waived either of these rights given that at the time of Appellant's court-martial neither Miller nor Jones had been decided, the President had determined negligent homicide to be an LIO of murder

---

[6] Our analysis in Jones was primarily focused upon Appellant's constitutional right to notice. See Jones, 68 M.J. at 468 (noting that "[t]he question presented . . . implicates constitutional due process imperatives of notice"). But as this decision makes clear, the constitutional rights of an accused to be charged with the offense of which he is convicted encompass more than notice.

14

and listed it as such in MCM pt. IV, para. 43.d.(2)(c), and it had been recognized as an LIO of murder by prior case law.  See, e.g., United States v. Davis, 53 M.J. 202, 205 (C.A.A.F. 2000) (recognizing that negligent homicide is an LIO of murder); United States v. Varraso, 21 M.J. 129, 131 (C.M.A. 1985) (same).

Nor is Appellant's request for an instruction on negligent homicide after the close of the evidence dispositive:  under R.C.M. 920(e)(2), the military judge had a sua sponte duty to instruct the court members on LIOs under the prevailing law at the time regardless of Appellant's request.  See United States v. McDonald, 57 M.J. 18, 20 (C.A.A.F. 2002).  Here, the evidence reasonably raised negligent homicide -- as the Government itself concedes.  Thus, had negligent homicide been a proper LIO, the military judge would have been obligated to instruct the panel on that offense.  Given "this legal and factual context, defense counsel's trial strategy could not be considered an intentional relinquishment or abandonment" of a known right.  Harcrow, 66 M.J. at 158 (finding no waiver of Sixth Amendment confrontation rights announced in Crawford v. Washington, 541 U.S. 36 (2004)); United States v. Stines, 313 F.3d 912, 917 (6th Cir. 2002) (stating that there was no waiver because it "would have been impossible

15

for the defendants to have intentionally relinquished or abandoned their Apprendi based claims considering Apprendi was decided after they were sentenced").

B.

Where there is no waiver, and in the absence of an objection, we test the instructions provided by the military judge for plain error based on the law at the time of appeal. See Harcrow, 66 M.J. at 159 ("where the law at the time of trial was settled and clearly contrary to the law at the time of appeal -- it is enough that an error be plain at the time of appellate consideration") (citations omitted); United States v. McMurrin, __ M.J. __ (8) (C.A.A.F. 2011); see also United States v. Robinson, 38 M.J. 30, 32 (C.M.A. 1993); R.C.M. 920(f). In the context of a plain error analysis, Appellant has the burden of demonstrating that: (1) there was error; (2) the error was plain or obvious; and (3) the error materially prejudiced a substantial right of the accused. See United States v. Powell, 49 M.J. 460, 463-65 (C.A.A.F. 1998).[7] As noted

---

[7] There is some disagreement about the application of the fourth prong of Olano —- whether the error "seriously affected the fairness, integrity or public reputation of judicial proceedings." Puckett v. United States, 129 S. Ct. 1423, 1429 (2009) (quoting Olano, 507 U.S. at 736) (citations omitted); see United States v. Paige, 67 M.J. 442, 453 (C.A.A.F. 2009) (Stucky, J., dissenting in part and concurring in the result).

above, negligent homicide is not an LIO of premeditated murder. Therefore, instructing on negligent homicide as an LIO was error that was clear and obvious. See Jones, 68 M.J. at 473 n.11.

Thus, having fulfilled the first two plain error prongs, the only question that remains is whether Appellant suffered prejudice to a substantial right. The rights at issue in this context are substantial, given that they are rooted in both the Fifth and Sixth Amendments. And under the facts of this case, the prejudice is clear -- Appellant was convicted of an offense that was not an LIO of the charged offense. Appellant did not agree to, and the military judge did not, amend the charge or specification.[8] Nor did the Appellant defend against the charged offense of premeditated murder on a theory that he was guilty of negligent homicide. Rather, his defense was that his only involvement in the deaths was in covering them up after the fact. Nor was the case tried on a theory of negligent homicide by the Government. Rather, the Government's position from start to finish was that Appellant ordered

---

[8] The Government's reliance on Jones is misplaced. While, consistent with R.C.M. 603, the Government may amend the charge sheet in the course of trial, there was no amendment to the charge sheet in this case. See Jones, 68 M.J. at 473.

17

United States v. Girouard, No. 10-0642/AR

PFC Clagett and SPC Hunsaker to murder the prisoners and not, as the ACCA found, that Appellant proximately caused the deaths by failing to properly supervise his men as it was his duty to "protect the detainees under his charge from harm." Girouard, 2010 CCA LEXIS 49, at *17, 2010 WL 3529415, at *6. But for the error Appellant would not have been convicted of negligent homicide. And while one might assume that but for the instruction on negligent homicide the members would have convicted Appellant of premeditated murder instead of acquitting him altogether, this assumption is speculative at best. Such a conviction would have required the members to be convinced beyond a reasonable doubt that he possessed the specific intent to murder, a far cry from the negligent intent they actually found in this case.[9] Appellant's conviction for negligent homicide was clearly prejudicial.

### III.

The decision of the United States Army Court of Criminal Appeals is reversed in part and affirmed in part. That portion of the decision affirming Appellant's convictions of Charge III and its specifications and the

---

[9] Moreover, the court members determined that Appellant lacked the specific intent necessary for conspiracy to commit premeditated murder, finding him not guilty of this offense as well.

sentence is reversed. The part of the court's decision affirming Appellant's convictions of the remaining charges and specifications is affirmed. The findings of guilty to Charge III and its specifications are set aside. Charge III and its specifications are dismissed. The record of trial is returned to the Judge Advocate General of the Army for remand to the Court of Criminal Appeals for reassessment of the sentence, or, if necessary, for ordering a rehearing on the sentence.

United States v. Girouard, No. 10-0642/AR

BAKER, Judge (dissenting):

I dissent for two reasons. First, consistent with my views in United States v. Jones, 68 M.J. 465, 475 (C.A.A.F. 2010) (Baker, J., dissenting), negligent homicide is a lesser included offense (LIO) of murder. Second, although I agree with the majority that a person may not be convicted of a crime for which he has not been charged, the majority fails to explain why it is appropriate to test for prejudice in light of Rule for Courts-Martial (R.C.M.) 201. R.C.M. 201(b)(3) plainly states that unless an offense is properly referred to a court-martial the court-martial is without jurisdiction to try that offense. If the majority is correct that negligent homicide is not a lesser included offense of murder, then the court-martial at which Appellant was convicted was without jurisdiction to try this offense and there is no need to test for prejudice.

I.

As stated, I adhere to the views expressed in my separate opinion in Jones. The history and purpose of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934 (2006), offenses indicate that the majority's adoption of a strict "elements test" from Schmuck v. United States, 489 U.S. 705, 716 (1989), is inapt in the context of military justice and Article 134, UCMJ. Parker v. Levy, 417 U.S. 733, 743-45 (1974), illustrates that the Supreme Court recognizes that case law

United States v. Girouard, No. 10-0642/AR

addressed to civilian society may not apply in the same manner
in military practice.  Recall that it was twenty years after
Schmuck that this Court in Jones decided otherwise.  Indeed,
there can be no clearer method for determining that an offense
is a lesser included offense of a greater offense than to state
so in the Manual for Courts-Martial.[1]  Neither does the new
strict elements test provide the intended clarity of notice, as
evidenced by litigation in this Court since Jones was decided.
See, e.g., United States v. Girouard, __ M.J. __ (C.A.A.F.
2011); United States v. McMurrin, __ M.J. __ (C.A.A.F. 2011);
United States v. Bonner, __ M.J. __ (C.A.A.F. 2011); United
States v. Alston, 69 M.J. 214 (C.A.A.F. 2010).  Consistent with
this Court's prior precedent as well as Levy, as the majority
notes, the President has listed negligent homicide as a lesser
included offense of murder.  Girouard, __ M.J. at __ (15).  He
has, in fact, done so for all homicide offenses in the MCM since
1951.  See, e.g., MCM paras. 197., 198. (1951 ed.) (discussing
murder under Article 118, UCMJ, and manslaughter under Article
119, UCMJ); MCM paras. 197., 198. (1969 ed.) (same); MCM paras.
43.d., 44.d. (1984 ed.) (same).  And, he has also done so
pursuant to the Take Care Clause, his authority as chief
executive, and most importantly as commander in chief.  See U.S.

---

[1]The version currently in effect is Manual for Courts-Martial,
United States (2008 ed.) (MCM).

2

Const. art. II. §§ 1-3. Indeed, this case highlights how the application of Jones undermines the commander in chief's authority and ability to flexibly provide for the good order and discipline of the armed forces, in this case in the context of actions taken in combat.

Therefore, based on my separate analysis in Jones, I would affirm the conviction of negligent homicide.

                              II.

I also disagree with the majority's approach of testing for prejudice in this case. R.C.M. 201(b)(3) states: "[F]or a court-martial to have jurisdiction . . . [e]ach charge before the court-martial must be referred to it by [a] competent authority." See also United States v. Adams, 66 M.J. 255, 258 (C.A.A.F. 2008) (citing R.C.M. 201(b) and stating "Jurisdiction depends upon a properly convened court, composed of qualified members chosen by a proper convening authority, and with charges properly referred." (emphasis added)).

The majority states that, "in the case at bar, the rights at stake are Appellant's constitutional rights to notice and to not be convicted of a crime that is not an LIO of the offense with which he was charged," and concludes that "under the facts of this case, the prejudice [to these rights] is clear -- Appellant was convicted of an offense that was not an LIO of the charged offense." Girouard, __ M.J. at __ (14, 17) (emphasis

                              3

added).  If Appellant was convicted of an offense that was not a lesser included offense of the charged offense, then Appellant was also convicted of an offense with which he was not charged. Thus, the majority seems to acknowledge the right to be properly charged, but also seems to ignore the fact that the failure to properly refer charges is jurisdictional error under R.C.M. 201(b)(3).  Instead, the majority applies a prejudice analysis, incorrectly suggesting that this error is nonjurisdictional and that there might be a circumstance in which the lack of a referral would not be prejudicial to an accused's material rights.

A review of the cases involving referral defects identifies certain defects that are nonjurisdictional and others that are jurisdictional.  See United States v. Cotton, 535 U.S. 625, 628–31  (2002) (holding that a change of law after trial resulting in an indictment that lacked an element of a charged offense was nonjurisdictional); Adams, 66 M.J. at 259 (holding that the failure to properly draft a convening order was administrative); United States v. Wilkins, 29 M.J. 421, 424-25 (C.M.A. 1990) (holding that where the accused pled guilty consistent with the terms of the pretrial agreement with the convening authority, the lack of swearing of the charges by an accuser, consideration by a staff judge advocate, or an Article 32, UCMJ, 10 U.S.C. § 832, investigation, were nonjurisdictional errors); c.f. United

4

States v. Henderson, 59 M.J. 350, 353-54 (C.A.A.F 2004) (holding that a special court-martial lacked jurisdiction over capital offenses where the tribunal failed to qualify for an exception under R.C.M. 201(f)(2)(C)(ii)-(iii)). Here, however, there is no referral defect -- there is no referral at all. In addition to the plain language of R.C.M. 201(b)(3), it must follow that if there are defects in the referral process that are jurisdictional, then the complete absence of referral must be jurisdictional.

The majority seeks to avoid the jurisdictional issue by suggesting that Appellant failed to object to a major amendment to the charge and specification as required by R.C.M. 603, resulting in a forfeiture of that right subject to plain error review. Girouard, __ M.J. at __ (8 n.4). Presumably, if the error is that Appellant failed to object to a major amendment of the charge that was properly referred, the jurisdictional issue goes away, and a plain error analysis is appropriate. However, there are two reasons that the majority's approach falls short.

First, an accused cannot retroactively forfeit a right. Forfeiture is "the failure to make a timely assertion of a right." United States v. Olano, 507 U.S. 725, 733 (1993). An assertion of a right can only be "timely" if it was made when the right existed. R.C.M. 603(d) provides that "[c]hanges or amendments to charges or specifications other than minor changes

5

may not be made over the objection of the accused unless the charge or specification is preferred anew." Thus, an accused's right to object only arises when trial counsel attempts to make a major amendment to the charge or specification, and an objection, in order to be "timely," must be made then. Retroactivity is only appropriate to determine whether there was an error at the time of appeal, and does not permit this Court to operate on the original proceedings as if the new law was in force at that time. The majority seems to acknowledge this much when it correctly held that Appellant could not have waived any error because no error existed given the state of the law at the time of trial. Girouard, __ M.J. __ (12-16).

Second, the concept of retroactive amendment cannot exist in the military system. To do so would amount to this Court's approval of an amendment that was not authorized by the convening authority. Unlike the civilian system, neither the parties nor the military judge has any authority on their own to amend a charge or specification in a way that alleges a completely different offense without the permission of the convening authority. This is a unique characteristic of the military justice system. "[T]he referral of charges to trial by court-martial require[s] the personal decision of the convening authority, which cannot be delegated." Wilkins, 29 M.J. at 424 (citation omitted). R.C.M. 601(a) defines referral as "the

order of a convening authority that charges against an accused will be tried by a specified court-martial."

Thus, the majority's citation to R.C.M. 603 is misplaced. It is true that under R.C.M. 603(d) the parties may choose to agree to a major amendment that changes the offense. However, the trial counsel may not do so without obtaining the convening authority's permission. Wilkins is controlling on the issue:

> Although the order is a jurisdictional prerequisite, the form of the order is not jurisdictional. Therefore, if the convening authority issued an order -- however informal, oral or written -- that a charge against [the accused] be tried by the same court-martial which ultimately entered the findings of guilty, then jurisdiction existed to enter findings on that charge.

Wilkins, 29 M.J. at 424. Therefore, assuming the convening authority agrees to the proposed amendment, the result is a constructive referral. An accused may certainly waive any attendant requirements such as a formal advice from the staff judge advocate under Article 34, UCMJ, 10 U.S.C. § 834, the swearing of the charges, and even an Article 32, UCMJ, investigation. Id. However, the convening authority's order of referral is jurisdictional and cannot be waived.[2]

_____

[2] As a separate matter, I believe the majority has failed to consider the potential double jeopardy implications of its decision. As noted, it is my view that, given the majority's conclusion, this court-martial had no jurisdiction to return the findings on negligent homicide. Generally, conviction by a tribunal lacking jurisdiction to hear the cause will not bar a subsequent trial by one that is vested with jurisdiction. See

7

Therefore, application of the Jones decision along with R.C.M. 201(b)(3) should lead to the logical conclusion that the conviction of an offense that has not been referred to the court-martial is jurisdictional error, not subject to a prejudice analysis.

---

Wayne R. LaFave et al., Criminal Procedure § 25, at 1210-11 (5th ed. 2009) (discussing United States v. Ball, 163 U.S. 662 (1896); Kepner v. United States, 195 U.S. 100 (1904); Serfass v. United States, 420 U.S. 377 (1975)).  Here, however, the majority suggests that this court-martial in fact had jurisdiction to return such findings.  Thus, in theory and arguably, Appellant has already been placed in jeopardy on a charge of negligent homicide.  Ordinarily, an appeal would waive such a question of double jeopardy; however, here the context is one in which Appellant's case was automatically referred to the CCA, which declined to apply Jones.  As a result, Appellant's only recourse was to appeal to this Court.  It is unclear whether, for double jeopardy purposes, that should be viewed as waiver of any double jeopardy claim.  R.C.M. 201 would remove, and does, remove any ambiguity on this point; however, the majority's R.C.M. 603 analysis muddies the question of whether another trial on the affected findings in this case is barred by Article 44, UCMJ, 10 U.S.C. § 844, or by the Fifth Amendment to the Constitution in light of our system of mandatory appeal.