****CORRECTED COPY – DESTROY ALL OTHERS****

# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

## UNITED STATES

**v.**

**Senior Airman ROBERT A. BONDO**
**United States Air Force**

**ACM 38438**

**18 March 2015**

Sentence adjudged 31 May 2013 by GCM convened at Luke Air Force Base, Arizona. Military Judge: William C. Muldoon (sitting alone).

Approved Sentence: Dishonorable discharge, confinement for 6 years, and reduction to E-1.

Appellate Counsel for the Appellant: Major Christopher D. James.

Appellate Counsel for the United States: Captain Richard J. Schrider and Gerald R. Bruce, Esquire.

Before

MITCHELL, WEBER, and CONTOVEROS
Appellate Military Judges

OPINION OF THE COURT

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.

MITCHELL, Senior Judge:

A general court-martial composed of a military judge convicted the appellant, contrary to his pleas, of one specification of attempted failure to obey a lawful order, three specifications of indecent acts, two specifications of indecent liberties with a child, one specification of rape by using restraint, three specifications of abusive sexual contact of a child, two specifications of sexual abuse of a child, and two specifications of indecent language, in violation of Articles 80, 120, 120b, and 134, UCMJ, 10 U.S.C.

§§ 880, 920, 920b, 934.[1]   The court sentenced him to a dishonorable discharge, confinement for 6 years, forfeiture of all pay and allowances, and reduction to E-1.  The convening authority approved the sentence except for the adjudged forfeitures and waived the mandatory forfeitures for the benefit of the appellant's wife and child.

The appellant assigns as error:   (1) the evidence is legally and factually insufficient as to multiple specifications; (2) the military judge erred when he admitted the appellant's statement of his cell phone's password to law enforcement agents after the appellant invoked his right to remain silent and requested counsel and the derivative evidence; and (3) the specifications and charge under Article 120b, UCMJ, failed to state an offense because the President has not yet prescribed rules to include the elements of the offense.  Additionally, the appellant requested appellate discovery of the mental health records of victims who submitted statements for the convening authority to consider during clemency.

We conclude the military judge abused his discretion in admitting the statement made by the appellant to law enforcement investigators after he requested counsel and the derivative evidence.  We therefore set aside the Second Additional Charge II and its Specification.  We disagree with the appellant on the remaining issues.  Accordingly, we affirm the remaining findings and reassess the sentence.

*Legal and Factual Sufficiency*

We review issues of legal and factual sufficiency de novo.  Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002).  "The test for legal sufficiency of the evidence is 'whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt.'"  *United States v. Humpherys*, 57 M.J. 83, 94 (C.A.A.F. 2002) (quoting *United States v. Turner*, 25 M.J. 324 (C.M.A. 1987)).  "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution."  *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001).  The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of the accused's guilt beyond a reasonable doubt."  *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987).  In conducting this unique appellate role, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt."  *Washington*, 57 M.J. at 399.  Our

---

[1] Due to the timing of the appellant's misconduct, the specifications alleged violations of the Code in effect in 2010, see *Manual for Courts-Martial, United States* (*MCM*), Appendix 28-1 (2012 ed.), as well as the Code currently in effect.

assessment of legal and factual sufficiency is limited to the evidence produced at trial. *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993).

The appellant challenges some of the specifications and charges as not legally and factually sufficient. We disagree. The evidence is both legally and factually sufficient for all of the affirmed charges and specifications.[2] We provide further analysis for some of the charges and specifications below. We have considered the remaining assignments of error of legal and factual sufficiency to the other charges and specifications and find them to be without merit. *See United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987).

    a. *Indecent Act with Miss KT (Specification 1 of Charge I)*

In her freshman year of high school, Miss KT began to text with a man she knew as "Ace," who was a friend of a friend. The texts began shortly before her 16th birthday, and the sexually suggestive texts occurred afterwards. Ace revealed that he was married and asked Miss KT not to tell her friend that he was texting her. He sent about 15 pictures to Miss KT to include photos of his penis and him wearing tight spandex, no shirt and a cowboy hat. In the photos, she saw that he had a tattoo of "Ace" on his chest. The appellant has the same tattoo on his chest. Another witness identified that "Ace" was the appellant's Facebook nom-de-plume. After sending Miss KT sexually explicit photos, he requested naked photos from her. She declined to send him any naked photos.

The appellant was convicted of an offense under Article 120(k), UCMJ, for indecent acts. *Manual for Courts-Martial, United States* (*MCM*), Appendix 28-2 (2012 ed.). The elements of indecent acts are: (1) the accused engaged in certain conduct; and (2) the conduct was indecent conduct. *Id.* The term "indecent conduct" is defined in Article 120(t)(12), in part, as follows: "[T]hat form of immorality relating to sexual impurity that is grossly vulgar, obscene, and repugnant to common propriety, and tends to excite sexual desire or deprave morals with respect to sexual relations."

Our superior court "has held that 'language' can be, or be part of, 'conduct' in a particular case." *United States v. King*, 71 M.J. 50, 52 (C.A.A.F. 2012). Here the appellant was a married 23-year-old who repeatedly provided unsolicited photos of his penis to a high school freshman. He also requested that she send him sexy, naked photos of herself. We find the evidence legally and factually sufficient to sustain this conviction.

    b. *Indecent Liberties with Miss SR (Specification 2 of Charge I)*

The appellant was convicted of taking indecent liberties on divers occasions with Miss SR, a child under 16 years of age, by manipulating her clothes to expose her breasts.

---

[2] Because we set aside the Second Additional Charge II and its Specification on other grounds, we do not examine the legal and factually sufficiency of the evidence as to this offense.

Miss SR is the younger sister of the appellant's wife. On six to ten occasions, the appellant pulled down her shirt. The appellant argues this fails to meet the following definition of indecent liberty under Article 120(t), UCMJ:

> The term "indecent liberty" means indecent conduct, but physical contact is not required. It includes one who with the requisite intent exposes one's genitalia, anus, buttocks, or female areola or nipple to a child. An indecent liberty may consist of communication of indecent language as long as the communication is made in the physical presence of the child. If words designed to excite sexual desire are spoken to a child, or a child is exposed to or involved in sexual conduct, it is an indecent liberty; the child's consent is not relevant.

*MCM*, A28-3.

The appellant argues that because there was no evidence that Miss SR's areola was exposed, the evidence is legally and factually insufficient to sustain the conviction. We agree that the evidence is factually insufficient to establish that in the charged time frame between 1 February 2012 and 27 June 2012 the appellant exposed Miss SR's breasts. Miss SR testified the appellant would grab her shirt and pull on it. However, there is no evidence that her breasts were exposed during any of these occasions between 1 February 2012 and 27 June 2012. We are not convinced beyond a reasonable doubt that her breasts were exposed. We have no evidence as to how far he pulled her shirt. We also have evidence that she was wearing a bra on at least one occasion. Miss SR also clearly stated that it was on a separate occasion outside the charged timeframe when her breasts were exposed by the appellant.[3] We therefore except out the language "to expose her breasts."

However, we find the remainder of the specification legally and factually sufficient and affirm that the appellant took indecent liberties with his underage sister-in-law when he manipulated her clothes with the intent to gratify his sexual desires. Along with pulling down her top, the appellant would grab her buttocks. Miss SR explained that this was "weird" because although it was typical for family members to smack each other's buttocks in a football player type fashion, the appellant instead would squeeze her buttocks. The appellant later told his 15-year-old sister-in-law that she was his "sexy secret." He also later showed her images of pornography and told her she would "look good" in similar poses.[4] The cumulative evidence proves that the appellant manipulated Miss SR's clothes with a sexual intent. The appellant engaged in sexual conduct with this child. He did not engage in innocent horseplay with her on these occasions.

---

[3] The appellant was charged with touching Miss SR's breasts on this occasion and on other times after July 2012. He was acquitted of this offense, Specification 1 of Charge II.

[4] The appellant was convicted of sexual abuse of a child for these actions in violation of Article 120b(c), UCMJ, 10 U.S.C. § 920b(c).

Regardless of whether her breasts were exposed, we find the evidence legally and factually sufficient that the appellant involved this child in sexual conduct when he manipulated her clothes with the intent to gratify his sexual desires. We therefore affirm the finding as to the specification while excepting the language "to expose her breasts." *See United States v. Girouard*, 70 M.J. 5, 9 (C.A.A.F. 2011) ("Article 79, UCMJ, provides the statutory authority . . . for an appellate court to affirm[] a[] [lesser included offense].")

c. *Abusive Sexual Contact with Miss EM (Specification 6, 7, & 8 of Charge I)*

Miss EM was the 15-year-old cousin of the appellant's wife. She testified that the appellant sexually abused her in a hotel while they were attending a wedding with other family members in May 2012. She explained that prior to the wedding she had seen the appellant many times and she thought "he was pretty cool," in part because he would go to a trampoline park with her. The appellant claims that because Miss EM earlier testified that she met him for the first time in July 2012 that her testimony establishes that the May incident was impossible. We agree with the appellant that this inconsistency may be considered in determining Miss EM's credibility. However, we disagree with the weight he provides it. We find Miss EM's testimony believable and credible and note the reference to July 2012 was an innocent mistake. We determine that the evidence is legally and factually sufficient.

d. *Indecent Language with Ms. AR (Charge III and its Specification)*

Ms. AR is the sister of the appellant's wife.[5] In April 2012, she was staying with her sister and the appellant for a two-week visit. One evening, as they were getting ready for a barbeque, the appellant told Ms. AR that she had "DSL," she looked well dressed, he wished his wife would dress like she was and maybe he had chosen the wrong sister. Ms. AR testified that she knew from hearing the phrase in high school that DSL was an acronym for "Dick Sucking Lips." Ms. AR agreed that the appellant never defined the term for her because she "didn't need him to tell me what DSL was."

At the time of the incident, the elements of indecent language under Article 134, UCMJ, were: (1) the accused orally or in writing communicated to another person certain language; (2) such language was indecent; and (3) under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces. *MCM*, Part IV, ¶ 89.b. We examine the entire record of trial to determine the surrounding circumstances in which the language was uttered to determine if it was indecent. *See United States v. Green*, 68 M.J. 266, 270 (C.A.A.F. 2010). It is not necessary that DSL appear as a word, phrase, or cyber-acronym in any standard dictionary. The evidence at trial was sufficient

---

[5] Ms. AR was 23 years old at the time she testified.

to establish its definition as a vulgar phrase. "'[I]ndecent language' has two alternative definitions, either of which may be relied upon under the offense: (1) grossly offensive to modesty, decency, or propriety, or shocks the moral sense, because of its vulgar, filthy, or disgusting nature; or (2) grossly offensive because of its tendency to incite lustful thought." *Id. at* 269. The appellant's language, in telling his sister-in-law that she has DSL while commenting on her appearance and saying he married the wrong sister, meets both of these statutory definitions. Having evaluated the evidence, we find it to be both legally and factually sufficient.

e. *Attempted Failure to Obey a Lawful Order (Additional Charge II)*

The appellant was given an order by his first sergeant not to have any contact with anyone under 18 years of age for 24 hours. Miss TA was a 17-year-old friend of the appellant and showed her phone to Technical Sergeant (TSgt) TE, a paralegal in the staff judge advocate's office. The paralegal saw a photo of Miss TA and the appellant on the phone. She also saw a record of three phone calls from the appellant's cell phone number to Miss TA's phone of 5, 10 and 13 minutes in length and one phone call to his number that lasted 5 minutes. The phone records indicate the calls occurred during the 24-hour no-contact order. Although Miss TA did not testify at trial, the military judge found the appellant guilty of the lesser included offense of attempting to disobey a lawful order. The appellant argues that because Miss TA did not testify the evidence is not sufficient. We disagree. Miss TA's sister testified and identified the photographs on her younger sister's phone. Furthermore, TSgt TE received the phone from Miss TA and took photographs that displayed the information about phone calls between the appellant's phone number and Miss TA's phone. We determine the evidence is both legally and factually sufficient.

*Law Enforcement Agents Request for Password after Request for Counsel*

On 15 August 2012, the appellant was interviewed by special agents with the Air Force Office of Special Investigations (AFOSI). The next day, a military magistrate authorized the seizure of the appellant's cell phone. Later that day, AFOSI agents interviewed the appellant again. He invoked his right to counsel, and the agents left the room. They had previously seized his cell phone pursuant to military magistrate authorization but found it password protected. The agents returned to the room and told the appellant they had a search warrant for the phone. They then asked him for the password; the appellant complied and provided the two passwords needed to unlock the phone. The phone was unlocked and not password protected when it was later sent to the Defense Computer Forensic Laboratory (DCFL). DCFL technicians analyzed the phone, extracted its contents, and produced a report.

At trial, the appellant moved to suppress his statement of his passwords and the evidence obtained from his cell phone by DCFL. The Government sought to admit two

exhibits[6] from the appellant's cell phone, a print-out of text messages sent by the appellant to SB and photographs of the appellant in various states of undress. The photographs were not on the password protected phone but instead were contained on an unsecured SD card (memory card) that was easily removed from the phone. The military judge denied the motion.

"A military judge's denial of a motion to suppress a confession is reviewed for an abuse of discretion." *United States v. Chatfield*, 67 M.J. 432, 437 (C.A.A.F. 2009) (citation omitted). Under this standard, the military judge's findings of fact are upheld unless they are clearly erroneous or unsupported by the record; however, we review de novo any conclusions of law supporting the denial of a motion to suppress a confession. *Id.*; *United States v. Swift*, 53 M.J. 439, 446 (C.A.A.F. 2000). "A military judge abuses his discretion when: (1) the findings of fact upon which he predicates his ruling are not supported by the evidence of record; (2) if incorrect legal principles were used; or (3) if his application of the correct legal principles to the facts is clearly unreasonable." *United States v. Ellis*, 68 M.J. 341, 344 (C.A.A.F. 2010) (citing *United States v. Mackie*, 66 M.J. 198, 199 (C.A.A.F. 2008)). "Further, the abuse of discretion standard of review recognizes that a judge has a range of choices and will not be reversed so long as the decision remains within that range." *United States v. Gore*, 60 M.J. 178, 187 (C.A.A.F. 2004) (citing *United States v. Wallace*, 964 F.2d 1214, 1217 n.3, (D.C. Cir. 1992)).

First, we briefly address the photographs of the appellant obtained from the SD card. The SD card was not password protected and was easily removed from the cell phone. "[C]ell phones may not be searched without probable cause and a warrant unless the search and seizure falls within one of the recognized exceptions to the warrant requirement." *United States v. Wicks*, 73 M.J. 93 at 99 (C.A.A.F. 2014) (citations omitted). The evidence on the SD card is separate from the password protected contents of the cell phone and within the type of evidence appropriately obtained by the search authorization. The military judge did not abuse his discretion in admitting the photographic evidence from the non-password protected SD card.

The military judge analyzed the motion under Article 31, UCMJ, 10 U.S.C. § 831, through a Fifth Amendment[7] analysis. However, a month after the appellant's court-martial, our superior court examined a similar issue and determined that when agents initiate questioning after an appellant invokes his right to counsel, it should be examined to determine if a Fifth Amendment violation occurred:

> The Government argues that this case is governed by the
> holding in *United States v. Frazier*, 34 M.J. 135, 137

---

[6] A third exhibit, Prosecution Exhibit 4, was offered but not admitted as the military judge sustained a defense objection on Mil. R. Evid. 403.
[7] U.S. CONST. Amend. V.

(C.M.A. 1992), that "[a] request for consent to search does not infringe upon Article 31 or Fifth Amendment safeguards against self-incrimination because such requests are not interrogations and the consent given is ordinarily not a statement." We do not take issue with that basic principle and agree that the NCIS request to search Hutchins's personal belongings on May 18 was not an interrogation. The principle set forth in *Frazier*, however, does not end our inquiry. Once Hutchins requested an attorney, under *Edwards* he could not be further interrogated unless: (1) counsel had been made available; or, (2) Hutchins reinitiated further "communication, exchanges, or conversations." *Edwards,* 451 U.S. at 484-85. As no attorney was made available to Hutchins, the *Edwards* inquiry in this case centers on whether, under the circumstances of this case, it was the Government or Hutchins that reinitiated further communication under *Edwards* and *Bradshaw*.

*United States v. Hutchins*, 72 M.J. 294, 297, (C.A.A.F. 2013) (citing *Frazier*, 34 M.J. at 137; *Edwards v. Arizona*, 451 U.S. 477, 484–85 (1981); *Or v. Bradshaw*, 462 U.S. 1039, 1045 (1983)).

In this case, the appellant was not provided with an attorney before the AFOSI agents reinitiated questioning. The appellant did not reinitiate discussion; rather, it was the AFOSI agents who reentered the room and questioned the appellant. Our superior court provided further guidance as to which law enforcement-initiated inquiries are permitted:

Not all communications initiated by an accused or law enforcement will trigger the protections under *Edwards*. The Court in *Bradshaw* went on to distinguish between inquiries or statements by either a police officer or a defendant that represented a desire to open a more "generalized discussion relating directly or indirectly to the investigation" and those "inquiries or statements, by either an accused or a police officer, relating to routine incidents of the custodial relationship." [*Bradshaw*, 462 U.S.] at 1045. The former circumstance constitutes a reinitiation of communication while the latter circumstance does not. The *Edwards* rule does not merely prohibit further interrogation without the benefit of counsel, it prohibits further "communication, exchanges, or conversations" that may (and in this case, did) lead to further interrogation. [*Edwards*,] 451 U.S. at 485.

Under *Bradshaw*, the issue before this court is whether the NCIS agent opened a more "generalized discussion relating directly or indirectly to the investigation" or whether his inquiry related to "routine incidents of the custodial relationship." [*Bradshaw*,] 462 U.S. at 1045.

*Hutchins*, 72 M.J. at 298 (quoting *Edwards*, 451 U.S. at 485; *Bradshaw*, 462 U.S. at 1045).

In *Hutchins*, 72 M.J. at 299, our superior court held that where that appellant invoked his right to counsel and investigators later asked to search his belongings, this action violated that appellant's Fifth Amendment rights because the investigator initiated contact to further the investigation. The court held that this action involved a "reinitiation of communication" in violation of that appellant's expressed invocation of his right to counsel. *Id.* Similarly, we hold that law enforcement investigators who ask a suspect for a password to a cell phone that they believe contains evidence of an offense is more than a routine incident of the custodial relationship. Routine incidents of the custodial relationship are akin to asking for a drink of water or to use the telephone. *Bradshaw*, 462 U.S. at 1045. The scenario here is far removed from those routine incident scenarios.

The Government alternatively argues that the law enforcement agents were acting within the scope of the valid warrant when they required the appellant to produce his password. We leave as unresolved whether a properly issued warrant may compel a suspect to produce a password.[8] The warrant in this case simply authorized "the seizure of the following specified property: Samsung T-Mobile cell phone owned by [the appellant]." Even if a warrant could compel a suspect to produce a password for law enforcement access to incriminating evidence, this one did not.

When there is an error in admitting evidence obtained in violation of the *Edwards* rule, we test to see if the error was harmless beyond a reasonable doubt. *See Hutchins* 72 M.J. at 299 (testing error for harmless beyond a reasonable doubt). Prosecution Exhibit 3 was the printout of text messages recovered from the appellant's cell phone between him and Ms. SB. Ms. SB did not testify at trial. Her father testified instead and identified her phone number. Without the admission of the text messages there was no evidence to convict the appellant of the offense of communicating indecent language with Ms. SB. We conclude the error was not harmless beyond a reasonable doubt as to the Second Additional Charge and Specification and set it aside.[9]

---

[8] *See generally* Dan Terzian, *The Fifth Amendment, Encryption, and the Forgotten State Interest*, 61 UCLA L. Rev. Disc. 298 (2014) (discussing the use of subpoenas to require suspects to produce passwords).
[9] Because we dismiss this specification, we do not address the appellant's argument that the evidence is factually and legally insufficient.

The appellant was convicted of two specifications in violation of Article 120b, UCMJ. Both specifications alleged he committed a lewd act with a child between 12 and 16 years of age and had the specific intent to arouse his sexual desire, or that of the child, when engaging in the acts. One act was telling a child she would "look good" in adult pornographic poses, and the other was telling a child, "I want 2 lick u" via communication technology. The appellant challenged the sufficiency of the Government's evidence at trial but did not challenge the specifications as defective. The appellant now alleges the specifications are defective because the President has not promulgated an Executive Order with the elements of the offense.[10]

At the time of the appellant's court-martial, the *MCM*, Part IV, ¶ 45b., included the following note after Article 120b, UCMJ:

> Note: The subparagraphs that would normally address elements, explanation, lesser included offenses, maximum punishments, and sample specifications are generated under the President's authority to prescribe rules pursuant to Article 36. At the time of publishing this MCM, the President had not prescribed such rules for this new statute, Article 120b. Practitioners should refer to the appropriate statutory language and, to the extent practicable, use Appendix 28 as a guide.

We reject the appellant's claim that the failure to publish elements in an Executive Order results in a defective specification. "Whether a specification is defective and the remedy for such error are questions of law, which we review de novo." *United States v. Ballan*, 71 M.J. 28, 33 (C.A.A.F. 2012) (citing *United States v. Crafter*, 64 M.J. 209, 211 (C.A.A.F. 2006); *United States v. Girouard*, 70 M.J. 5, 10 (C.A.A.F. 2011) (determining the appropriate remedial standard by means of a de novo review of the rights at stake)).

> The military is a notice pleading jurisdiction. A charge and specification will be found sufficient if they, first, contain the elements of the offense charged and fairly inform a defendant of the charge against which he must defend, and, second, enable him to plead an acquittal or conviction in bar of future prosecutions for the same offense. The rules governing court-martial procedure encompass the notice requirement:

---

[10] Executive Order 13643 was published on 15 May 2013, prior to the adjournment of the appellant's court-martial. It includes the maximum punishments for Article 120b offenses but does not include any elements, explanation, lesser included offenses, or sample specifications.

A specification is sufficient if it alleges every element of the charged offense expressly or by necessary implication.

*United States v. Fosler*, 70 M.J. 225, 229 (C.A.A.F. 2011) (citations omitted) (internal quotation marks omitted).

Here, the specifications contain every element of the offenses as enacted by Congress.

The Supreme Court has observed that the definition of the elements of criminal offense is entrusted to the legislature, particularly in the case of federal crimes, which are solely creatures of statute. Congress has broad authority to define the elements of offenses under the constitutional power to make rules for the government and regulation of the armed forces.

*United States v. Neal*, 68 M.J. 289, 300 (C.A.A.F. 2010) (citations omitted) (internal quotation marks omitted).

We conclude that Congress provided the required due process notice of the elements when it revised Article 120b, UCMJ, as a punitive article established by the National Defense Authorization Act for Fiscal Year 2012. The appellant has been on notice since this law was passed by Congress. While an Executive Order providing further guidance would be welcome, it is not required to establish elements. The elements of federal criminal law are established by Congress. The referred specifications and charges included the congressionally mandated elements. We reject the appellant's argument.

*Appellate Discovery of Victim's Mental Health Records*

The appellant moved this court to compel production of post-trial discovery, a motion opposed by the Government. We denied the motion and the appellant's motion for reconsideration for the reasons set forth below.

Specifically, the appellant requests, pursuant to *United States v. Campbell*, 57 M.J. 134 (C.A.A.F. 2002), that this court order production of the mental health records of Miss SR, a minor victim of the appellant's sexual acts. The appellant alleges the records should be produced because two victim impact statements from Miss SR's mother presented to the convening authority referenced mental health treatment Miss SR was receiving, treatment complicated by the appellant's actions.

In order for this court to compel the Government to produce post-trial discovery, an appellant must first meet "his threshold burden of demonstrating that some measure of appellate inquiry is warranted." *Id.* at 138. In addressing this question, this court should consider, among other matters, the following:

> (1) whether the defense has made a colorable showing that the evidence or information exists;
> (2) whether the evidence or information sought was previously discoverable with due diligence;
> (3) whether the putative information is relevant to appellant's asserted claim or defense; and
> (4) whether there is a reasonable probability that the result of the proceeding would have been different if the putative information had been disclosed.

*Id.*

The appellant has failed to meet his threshold burden of demonstrating some measure of appellate inquiry is warranted in this matter. First, he has not demonstrated that the putative information is relevant to any asserted claim or defense. The appellant has filed an assignment of errors in this matter and had not asserted any alleged error in the post-trial processing of his case. At most, the appellant alleges that if the records conflicted with the victim impact statement then he would challenge the veracity of the victim and allege an error in post-trial processing. We find these claims to be too highly speculative to merit any weight. The appellant has no enumerated right to have Miss SR's mental health records be produced post-trial, apart from the *Campbell* standard. Air Force policy allows victims the opportunity to provide written input to the convening authority's staff judge advocate as to whether the convening authority should approve the findings and sentence or grant some form of clemency. Air Force Instruction 51-201, *Administration of Military Justice*, ¶ 9.9 (6 June 2013). Victim impact statements are then provided to the accused and defense, and the defense is provided the opportunity to comment upon such statements as part of its post-trial submission to the convening authority. *Id.* at ¶ 9.9.3. No mechanism is established in Air Force process to provide the defense with additional discovery rights based upon information contained in a victim impact statement, apart from the *Campbell* standard.

Additionally, we see no reasonable probability that the result of the proceeding would have been different had this information been disclosed. Having reviewed the entirety of the matters submitted to the convening authority, including the victim impact statements, we see no reasonable probability that the convening authority might have granted clemency had Miss SR's mental health records been produced, even assuming those records would have been favorable to the appellant and could have been used consistent with Mil. R. Evid. 513. This is particularly true where the victim impact

statements related to the impact of the appellant's crimes but the appellant maintained his innocence in his clemency submission. We again reject the appellant's claim that post-trial statements made by victims for consideration by the convening authority provide a basis for the production of mental health records.

*Sentence Reassessment*

This court has "broad discretion" when reassessing sentences. *United States v. Winckelmann*, 73 M.J. 11, 12 (C.A.A.F. 2013). Our superior court has repeatedly held that if we "can determine to [our] satisfaction that, absent any error, the sentence adjudged would have been of at least a certain severity, then a sentence of that severity or less will be free of the prejudicial effects of error . . . ." *United States v. Sales*, 22 M.J. 305, 308 (C.A.A.F. 1986). This analysis is based on a totality of the circumstances with the following as illustrative factors: dramatic changes in the penalty landscape and exposure, the forum, whether the remaining offenses capture the gravamen of the criminal conduct, whether significant or aggravating circumstances remain admissible and relevant, and whether the remaining offenses are the type that we as appellate judges have experience and familiarity with to reliably determine what sentence would have been imposed at trial. *Winckelmann*, 73 M.J. at 15–16.

In the present case, we have set aside the charge and specification for electronically communicating indecent language to Ms. SB. The appellant is justly convicted of multiple sexual offenses against Ms. KT, Miss SR, Ms. DM, Miss EM, Mr. BR, and Ms. AR. Even after he was under investigation for these various offenses, the appellant's commander gave him an order not to communicate with any person under the age of 18 years for 24 hours; the appellant refused to comply with that order and contacted Miss TA. There is no dramatic change to the penalty landscape—the dismissed charge carried a maximum sentence of confinement of 2 years. The appellant is convicted of the offense of rape by force of Ms. DM, an offense that has a maximum punishment of life without parole. He is also convicted of multiple other offenses to include indecent acts and indecent liberties with a child, which combined, carry a maximum of decades in confinement. We also consider that the appellant was sentenced by a military judge alone, a forum that results in us being more certain of our determination as to what would have occurred absent the error. *See id.* at 16. The remaining offenses capture the gravamen of the criminal conduct and the most significant aggravating evidence remains admissible. Ms. SB did not testify in either findings or sentencing. Her father's testimony was primarily focused on her telephone number. As appellate court judges, we have experience and familiarity in reliably determining the sentence that would have been imposed at trial absent the set aside charge and specification. We have considered the totality of the circumstances presented, to include the factors addressed above, and determine that the sentence imposed would have been at least the approved sentence of a dishonorable discharge, confinement for six years and reduction to E-1.

*Conclusion*

We set aside the Second Additional Charge II and its Specification. We affirm Specification 2 of Charge I with the exception of the words "to expose her breasts." We find the approved findings, as modified, and sentence are correct in law and fact, and no remaining error materially prejudicial to the substantial rights of the appellant occurred.[11] Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c), *United States v. Reed*, 54 M.J. 37, 41 (C.A.A.F. 2000). Accordingly, the approved findings and sentence are **AFFIRMED**.

FOR THE COURT

STEVEN LUCAS
Clerk of the Court

---

[11] Although the military judge ordered a Mil. R. Evid. 513 closed hearing, these pages of the record are not under seal. Accordingly, the Clerk of the Court is directed to seal pages 19—26 of the transcript in the original record of trial. The Government is directed to remove these pages from all other copies of the record of trial, as required by Air Force Manual 51-203, *Records of Trial*, ¶ 6.3.4 (27 June 2013).