# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

### No. ACM 39878 (f rev)

———————————

### UNITED STATES
*Appellee*

**v.**

### Jakorbie R. DIXON
Airman Basic (E-1), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

*Upon Further Review*

Decided 6 June 2022

———————————

*Military Judge:* Bradley A. Morris; Dayle P. Percle (remand).

*Sentence:* Sentence adjudged on 21 November 2019 by GCM convened at Joint Base San Antonio-Randolph, Texas. Sentence entered by military judge on 20 December 2019 and reentered on 27 September 2021: Bad-conduct discharge, confinement for 1 year, and a reprimand.

*For Appellant:* Major Amanda E. Dermady, USAF; Major Sara J. Hickmon, USAF.

*For Appellee:* Lieutenant Colonel Matthew J. Neil, USAF; Major Alex B. Coberly, USAF; Mary Ellen Payne, Esquire; MacCaelin A. Sedita (legal intern).[1]

Before KEY, ANNEXSTAD and MEGINLEY *Appellate Military Judges*.

Judge MEGINLEY delivered the opinion of the court, in which Judge ANNEXSTAD joined. Senior Judge KEY filed a separate opinion concurring in part and in the result.

———————————

[1] Mr. Sedita was supervised by attorneys admitted to practice before this court.

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

———————————————

MEGINLEY, Judge:

This case is before our court for the second time. Previously, our court remanded this case to the Chief Trial Judge, Air Force Trial Judiciary, to resolve a substantial issue with the convening authority's Decision on Action memorandum as no action was taken on the adjudged sentence. *See United States v. Dixon*, No. ACM 39878, 2021 CCA LEXIS 440, at *6–7 (A.F. Ct. Crim. App. 31 Aug. 2021) (unpub. op.). We deferred deciding the remaining assignments of error until the record was returned for completion of our review. Article 66(d), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 866(d), *Manual for Courts-Martial, United States (*2019 ed.).

After our remand, the convening authority signed a new Decision on Action memorandum approving the sentence in its entirety on 10 September 2021. On 27 September 2021 the military judge completed a new entry of judgment (EoJ) and the record of trial was returned to this court. We find the convening authority's 10 September 2021 action on the sentence complies with applicable law and that the modified EoJ correctly reflects the sentence and post-trial actions taken in this case. We now turn to Appellant's remaining assignments of error.

A military judge sitting as a general court-martial convicted Appellant, contrary to his pleas, of one specification of housebreaking and one specification of communicating a threat in violation of Articles 130 and 134, UCMJ, 10 U.S.C. §§ 930, 934.[2,3] Both charged offenses occurred on or about 29 October 2018. The military judge sentenced Appellant to a bad-conduct discharge, confinement for one year, and a reprimand. Appellant was credited 337 days of pretrial confinement credit.[4]

---

[2] References to the punitive articles of the UCMJ are to the *Manual for Courts-Martial, United States* (2016 ed.) (2016 *MCM*). Unless otherwise noted, all other references to the UCMJ, the Military Rules of Evidence, and the Rules for Courts-Martial are to the *Manual for Courts-Martial, United States* (2019 ed.).

[3] Appellant pleaded not guilty to housebreaking "but guilty to the lesser-included offense of unlawful entry," in violation of Article 134, UCMJ. Whether unlawful entry is a lesser-included offense (LIO) of housebreaking will be discussed later in this opinion.

[4] Appellant was also charged with other offenses. Charge I included two specifications of sexual assault and one specification of indecent exposure, all under Article 120,

Appellant raises five issues on appeal: (1) whether Appellant's guilty plea is improvident because unlawful entry is not a lesser-included offense (LIO) of housebreaking; (2) whether the evidence is legally and factually sufficient to support Appellant's conviction for communicating a threat; (3) whether the evidence is legally and factually sufficient to support Appellant's conviction for housebreaking; (4) whether the recklessness mens rea for communicating a threat under *Manual for Courts-Martial, United States* (2016 ed.) (2016 *MCM*)[5] violates the First Amendment of the United States Constitution;[6] and (5) whether Appellant is entitled to sentence relief because he received nonjudicial punishment under Article 15, UCMJ, 10 U.S.C. § 815, for the same offense for which he was sentenced at trial.[7] Because we resolve the first three issues in Appellant's favor and set aside the findings and sentence, we do not reach the remaining issues.

# I. BACKGROUND

Appellant joined the Air Force in January 2018. At the time of his offenses, Appellant was a student in the basic sensor operator course (BSOC) at Joint Base San Antonio-Randolph, Texas. Appellant and other BSOC students lived in on-base dormitories. Appellant was selected to be a "rope," which is a technical school student leadership position. As one witness stated, Appellant was "the eyes and ears for the MTLs [military training leaders]." However, another witness, Airman First Class (A1C) AC, testified that Appellant let the role go "to his head."

## A. Appellant's Pleas

At the beginning of his court-martial, Appellant pleaded guilty to a charge and specification of housebreaking, under Article 130, UCMJ (Charge II and its Specification), which alleged Appellant

> did, at or near Joint Base San Antonio-Randolph, Texas, on or about 29 October 2018, unlawfully enter the dorm room occupied by [AG], . . . the property of the United States Air Force, with

UCMJ, 10 U.S.C. § 920. Both sexual assault specifications were withdrawn and dismissed without prejudice after arraignment. At trial, Appellant was acquitted of the indecent exposure specification.

[5] *See* 2016 *MCM,* pt. IV, ¶ 110.b.(1).

[6] U.S. CONST. amend. I.

[7] We have reordered Appellant's assignments of error. Issue (5) was personally raised by Appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

the intent to commit a criminal offense, to wit: communicating a threat, therein.[8]

Appellant pleaded not guilty to a charge and specification of communicating a threat, under Article 134, UCMJ (Charge III and its Specification), which alleged Appellant

did, at or near Joint Base San Antonio-Randolph, Texas, on or about 29 October 2018, wrongfully communicate to [AG] a threat to injure the reputation of [AG] by alerting Military Training Leaders to her violation of Air Education and Training Command dorm rules, such conduct being to the prejudice of good order and discipline in the armed forces.

Although Appellant initially pleaded guilty to housebreaking as charged, the military judge questioned the adequacy of the plea's factual basis after the providence inquiry. The military judge was not convinced that Appellant's communication satisfied the legal definition of a threat so he recessed the court to review case law on this matter. In a Rule for Courts-Martial (R.C.M.) 802 conference, the military judge explained four proposed courses of action based upon his review of the case law.[9] Upon returning on the record, the military judge noted Appellant's defense counsel stated Appellant would now plead guilty to the LIO of unlawful entry under Article 134, UCMJ. When asked if it was his "desire right now to plea [guilty] to the lesser included offense of unlawful entry under Article 134 vice Article 130 housebreaking," Appellant responded, "Yes sir." The military judge then advised Appellant that his prior attempt to plead guilty to housebreaking could not be "utilized against [him]" under Mil. R. Evid 410.[10] The military judge then conducted a new providence inquiry regarding Appellant's guilty plea to unlawful entry. The military judge asked Appellant whether he: (1) understood "the elements and the definitions" of unlawful entry; (2) understood his guilty plea meant that "the elements ac-

---

[8] AG was an active duty member at the time of Appellant's offenses.

[9] According to the military judge, those courses of action were: (1) continue with Appellant's pleas under the offense as charged, however, the military judge advised he "had concerns as to elements one, three, and four as the facts stood, but things can change;" (2) possibly plea to housebreaking by extortion, however, the military judge stated that based on the facts, he "had concerns under that [course of action] as well;" (3) "divert and plead to the lesser included offense of unlawful entry under Article 134;" or, (4) "withdraw the guilty plea and proceed to the case in chief[,] [a]nd the court would ignore everything that had come prior pursuant [Mil. R. Evid.] 410."

[10] The record does not indicate Appellant actually withdrew his plea of guilty to housebreaking.

curately describe[d]" his actions; and (3) believed and admitted that "the elements and the definitions taken together correctly describe[d]" his actions. Appellant responded in the affirmative to each question.

### B. Appellant's Providence Inquiry to Unlawful Entry

During the providence inquiry on the offense of unlawful entry, Appellant told the military judge that he received a text message from Airman (Amn) JG in the early morning hours of 29 October 2018 asking for assistance because Amn JG was locked out of his dorm room. Appellant walked over to Amn JG's room and told him that he "would be back" and he "would see what [he] could do." As Appellant was walking back towards his room, he saw his suitemate, A1C SR, coming out of his dorm room—A1C SR had also received a text message from Amn JG stating that he had been locked out of his room. A1C SR and Appellant walked to the MTL's office where A1C SR used a code to access a lockbox which housed a master key capable of unlocking the dorm rooms. A1C SR handed Appellant the key and Appellant went to Amn JG's room where he used the master key to unlock the door. While there, Appellant inquired as to the whereabouts of Amn JG's roommate, A1C DD. Amn JG responded that A1C DD was not there; Appellant then returned the master key to A1C SR.

Appellant returned to his room and told his roommate, Amn MB, that he believed A1C DD was in the room assigned to AG, a female student, in violation of an Air Education and Training Command (AETC) policy which prohibited members of the opposite gender in the same dorm room. Appellant took his chair and "sat it outside of [his] room, and positioned it towards [AG's] room." Appellant waited for "a little while" but decided to write a note and slide it under AG's room door when he did not see anyone enter or leave her room. "After nothing happened in regards to the note," Appellant scanned AG's door with a key card "to make some noise" but it did not unlock her door. Appellant stated "after nothing happened" he went to the MTL's office, retrieved the master key from the lockbox, opened AG's door, and slid the note into her room where it would be seen. Appellant acknowledged his hand crossed the threshold of AG's door, which would constitute "entering" the property of another for the purposes of unlawful entry.

### C. Government's Case-in-Chief

Although Appellant pleaded guilty to unlawful entry, the Government proceeded to prosecute Appellant for housebreaking and communicating a threat. The Government called A1C DD, who was, in fact, with AG in her dorm room. When he and AG went to sleep that night, A1C DD testified he was "confident" that AG's door was locked. Sometime after falling asleep, AG woke him up and

told him to look over at the door. A1C DD looked over and saw "a shadow standing there." He further testified, "I saw a bright light . . . I didn't see who it was . . . [i]n the doorway, the door was wide open and there was a figure standing in the door." It took A1C DD "a few seconds . . . to realize what was going on" and the "figure vanished like somebody running away" after he got out of bed.

After the person left, A1C DD went up to the door and locked it, making sure the deadbolt lock was used. At some point after falling asleep again, A1C DD woke up and saw the door was open again. He got up and shut the door. A1C DD testified that at a later point there was rattling at the door "like a key trying to be put into the door [lock]." On this third time, A1C DD waited and walked up slowly to the door. He testified, "So, I walked up to the door and I snatched it open as quick as possible and there I saw [Appellant] standing there." Trial counsel asked A1C DD, "[A]fter you pull open the door and realize that it's [Appellant] standing there at the other side of the threshold, what happens next?" A1C DD responded,

> [Appellant] ran to my left, to the right of the room, two doors down to where his room was at and I poked my head out and I watched him run right into his room. Next, I was like, I turned around and told [AG] who it was and she asked me and I also noticed a letter on the floor.

A1C DD opened the note, which he saw for the first time and which read,

> We both know that opposite genders aren't allowed in the rooms. If you and [A1C DD] are going to break the rules, then you should be more discreet. I'm obligated to tell the Sergeant and she is going to check the cameras. However, I am willing to make a deal with you, [AG]. If you want to avoid getting ratted out and you want to make a deal with me, then here is what you are going to do. You will send the word "Yes" in the 12 TRS [Training Squadron] Group Chat tomorrow. Once you do that, I will know that you are willing to cooperate. If you do not send the word "Yes,"[ ] then I will assume that you do not want to make a deal, and I will tell Sergeant . . . to check the cameras. You have until the end of the day (Monday) to send that message.[11]

After AG and A1C DD read the note, they went to Amn ST's room, who was another "rope," and explained the situation. A1C DD then walked around the

---

[11] The court notes there is nothing in the record as to what "deal" Appellant wanted to make with AG, a fact the Government acknowledged during their closing argument.

corner and saw Amn MB putting a key back into the MTL's lockbox. A1C DD took the key from Amn MB.

Appellant's roommate Amn MB testified next for the Prosecution and he confirmed, on the night in question, that Appellant wrote a note, Appellant left their room multiple times, and that Appellant had asked him to "retrieve a key from [AG's] door." Amn MB retrieved the key and then "tried to put it in the lockbox on the MTL door," but A1C DD saw him and took the key from him.

AG testified that she was studying with A1C DD for a BSOC test on the night in issue. The two went to bed and at some point AG heard her door lock beeping, which meant that someone was scanning a keycard to enter her room. AG stated A1C DD went to check to see if anyone was there, but he did not see anyone so he locked the door's deadbolt. AG explained that by locking the deadbolt no one would be able to enter the room, even with a key card programmed to unlock her room, unless they had the physical key. AG went back to sleep but woke up later and saw that her door was open and someone was standing in the doorway with a flashlight or a phone light. She did not see who it was, but saw the person walk away. AG woke A1C DD and told him what had happened so he got up, shut the door, and locked the deadbolt again.

AG further testified that about 10 to 15 minutes later she heard someone trying to open the door again and explained that A1C DD got up, opened the door "really fast and whoever was standing there just took off." After she closed the door, A1C DD found the note right by the door. AG testified upon reading the note, she was "very angry" and "scared, but more angry than anything" because she did not like that someone would try to get her to do something in exchange for their silence. She stated that she "would much rather tell on [her]self than let anyone else tell on [her]." After she read the note, AG told the other "rope" Amn ST everything that happened. AG acknowledged she knew she was breaking the rules by having A1C DD in her room and that she later received disciplinary action for doing so.

Master Sergeant JJ, who was an MTL assigned to the same squadron as Appellant and who was familiar with the training environment at BSOC, acknowledged that AG violated policy by having another Airman of the opposite gender in her room. During her testimony, she stated that AG and A1C DD's conduct could have resulted in more severe action since the commander could have decided to withdraw them from BSOC.

The military judge ultimately found that the Government proved the greater offense of housebreaking and found Appellant guilty of that offense, as well as communicating a threat.

## II. DISCUSSION

### A. Legal and Factual Sufficiency of the Communicating a Threat and Housebreaking Allegations

#### 1. Law

We review issues of legal and factual sufficiency de novo. *See United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). Our assessment of legal and factual sufficiency is limited to the evidence produced at trial. *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993).

"'The test for legal sufficiency is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Robinson*, 77 M.J. 294, 297–98 (C.A.A.F. 2018) (quoting *United States v. Rosario*, 76 M.J. 114, 117 (C.A.A.F. 2017)). "The term reasonable doubt, however, does not mean that the evidence must be free from conflict." *United States v. Wheeler*, 76 M.J. 564, 568 (A.F. Ct. Crim. App. 2017) (citing *United States v. Lips*, 22 M.J. 679, 684 (A.F.C.M.R. 1986), *aff'd*, 77 M.J. 289 (C.A.A.F. 2018)). "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001) (citations omitted). As a result, "[t]he standard for legal sufficiency involves a very low threshold to sustain a conviction." *United States v. King*, 78 M.J. 218, 221 (C.A.A.F. 2019) (alteration in original) (internal quotation marks and citation omitted).

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are ourselves] convinced of the [appellant]'s guilt beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987). "In conducting this unique appellate role, we take 'a fresh, impartial look at the evidence,' applying 'neither a presumption of innocence nor a presumption of guilt' to 'make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt.'" *Wheeler*, 76 M.J. at 568 (alteration in original) (quoting *Washington*, 57 M.J. at 399).

Appellant was convicted of housebreaking, in violation of Article 130, UCMJ. The Government was required to prove two elements beyond a reasonable doubt: (1) that on or about 29 October 2018, Appellant unlawfully entered the property of another; and (2) the unlawful entry was made with the intent to commit a criminal offense therein, to wit: communicating a threat. *See* 2016 *MCM*, pt. IV, ¶ 56.b. "The intent to commit some criminal offense is an essential element of housebreaking and must be alleged and proved to support a conviction of this offense." 2016 *MCM*, pt. IV, ¶ 56.c.(2).

Appellant was also convicted of communicating a threat, in violation of Article 134, UCMJ. The Government was required to prove four elements beyond a reasonable doubt: (1) that, on or about 29 October 2018, Appellant communicated certain language to AG expressing a present determination or an intent to wrongfully injure her reputation, presently or in the future, by alerting MTLs to her violation of AETC dormitory rules; (2) the communication was made known to AG or to a third person; (3) the communication was wrongful; and (4) under the circumstances, Appellant's conduct was prejudicial to good order and discipline. *See* 2016 *MCM*, pt. IV, ¶ 110.b.

When determining whether the communication constitutes a threat under the first element, the communication is evaluated from the perspective of a reasonable person. *See United States v. Rapert*, 75 M.J. 164, 168 (C.A.A.F. 2016); *United States v. Phillips,* 42 M.J. 127, 139 (C.A.A.F. 1995). The first prong is an objective standard. "'To establish [the declaration of a] threat [under the first element of Article 134], the prosecution must show that the declaration was made' and not 'that the accused actually entertained the stated intention.'" *Rapert,* 75 M.J. at 168 (alterations in original) (quoting *United States v. Humphrys*, 22 C.M.R. 96, 97 (C.M.A. 1956)).

The third element, "which requires that a threat be 'wrongful,' is properly understood to reference the accused's subjective intent." *Id.* at 169. "[T]o establish that the communication was wrongful it is necessary that the accused transmitted the communication for the purpose of issuing a threat, with the knowledge that the communication would be viewed as a threat, or acted recklessly with regard to whether the communication would be viewed as a threat." 2016 *MCM*, pt. IV, ¶ 110.c. "However, it is not necessary to establish that the accused actually intended to do the injury threatened. Nor is the offense committed by the mere statement of intent to commit an unlawful act not involving injury to another." *Id.* If circumstances reveal that the communication was made "in jest or for an innocent or legitimate purpose" the communication is not wrongful. *See Rapert,* 75 M.J. at 169.

In *United States v. Whitfield*, ARMY 20130212, 2015 CCA LEXIS 184 (A. Ct. Crim. App. 14 Apr. 2015) (unpub. op.) (per curiam), *rev. denied*, 75 M.J. 32 (C.A.A.F. 2015)*,* the appellant threatened to reveal another soldier's misconduct to her chain of command. The United States Army Court of Criminal Appeals (ACCA) held that "appellant's threat to truthfully reveal [the victim's] misconduct to the chain of command falls short of the requirement that appellant's communication be 'wrongful.'" *Whitfield*, unpub. op. at *4. The ACCA opined,

> Although appellant's threat to disclose true information coupled
> with the proscribed motive of gaining an advantage by inhibiting

9

> [the victim] from revealing his own misconduct may have sup-
> ported an extortion conviction, the panel acquitted appellant of
> that charge. This outcome may well have been avoided had the
> [G]overnment not offered the panel an alternative, albeit flawed,
> theory of an Article 134 offense for communication of a threat.
> Be that as it may, we are simply not convinced that appellant's
> threat to report a potential crime was wrongful pursuant to Ar-
> ticle 134, UCMJ. *Contra United States v. White,* 62 M.J. 639
> (N.M. Ct. Crim. App. 2006).

*Id.* at *4–5. The ACCA set aside and dismissed the charge and specification.
*Id.* at *5.

In *United States v. White*, 62 M.J. 639 (N.M. Ct. Crim. App. 2006), *rev. de-nied*, 64 M.J. 225 (C.A.A.F. 2006), the appellant had threatened a 15-year-old victim with disclosing information about the victim's sexual relations to her parents, her boyfriend's parents, and "anyone who would listen." *Id.* at 642. The United States Navy-Marine Court of Criminal Appeals (NMCCA) held that the case law suggested that its "focus should be on the purpose and intent underlying the threat as opposed to the truth or falsity of the threat itself." *Id.* at 641.

### 2. Analysis

As alleged, Appellant threatened to injure the reputation of AG by alerting MTLs to *her violation* of AETC dormitory rules. There is scant case law on the issue of communicating a threat to injure reputation, yet, as part of a R.C.M. 917 motion, the Defense provided the military judge with *Whitfield*. Conversely, the Government provided the military judge with *White*. The Government continues to argue *White*, stating that the "the wrongfulness of Appellant's threat stemmed from his illegitimate purpose."

We find *White* is factually too different from this case to be instructive. *White* concerned a child victim, where the appellant threatened to reveal her sexual activities, and where appellant acknowledged during his providence inquiry that the "purpose of this communication was to frighten the victim into silence about their sexual involvement." 62 M.J. at 642. In contrast, Appellant's conduct in this case is much closer to the conduct the ACCA discussed in *Whitfield*. Much like *Whitfield*, we do not see that Appellant's communication to AG was in fact wrongful. Appellant communicated to AG that he knew she violated the rules, and arguably, as a "rope," would have had a duty to report her violation. We do not believe this situation is any different than if Appellant had threatened to report her when he was standing in the door or at some later point. We are hard pressed to find that threatening to report someone's misconduct can result in a wrongful injury to reputation.

In *Whitfield*, the ACCA stated that appellant's "threat to disclose true information coupled with the proscribed motive of gaining an advantage by inhibiting [the victim] from revealing his own misconduct may have supported an extortion conviction." *Whitfield*, unpub. op. at \*4–5. The same is true in this case. The evidence may have also more appropriately supported an attempted extortion conviction; however, Appellant was not charged in this manner. Even the NMCCA acknowledged in *White* that "[d]isclosing true information for an illicit motive is recognized as . . . extortion." 62 M.J. at 642. "[T]he [G]overnment controls the charge sheet," *United States v. Reese*, 76 M.J. 297, 301 (C.A.A.F. 2017), and therefore, it could have charged Appellant with extortion. It elected not to do so.

In light of the evidence presented at trial, the primary questions for this court are whether Appellant's communication was a threat, and if so, whether it was wrongful. We are not convinced that Appellant's threat to report AG's dormitory violation was wrongful. After weighing all the evidence in the record of trial and having made allowances for not having personally observed the witnesses, we are not convinced of Appellant's guilt of communicating a threat beyond a reasonable doubt and therefore we find Appellant's conviction for communicating a threat factually insufficient. Because the second element of housebreaking requires that Appellant entered AG's dorm room with the intent to commit a criminal offense (in this case, communicating a threat), by finding that Appellant did not intend to communicate a threat, we also find the housebreaking charge and its specification factually insufficient.

## B. Appellant's Plea to Unlawful Entry

### 1. Additional Background

Although we set aside Appellant's convictions for housebreaking and communicating a threat, the court will address Appellant's plea of guilty to unlawful entry as an LIO of housebreaking. Appellant argues his guilty plea to unlawful entry is improvident because unlawful entry is not an LIO of housebreaking, an argument he raises for the first time on appeal. We agree.

### 2. Law

"Article 79, UCMJ, provides the statutory authority for a military judge to instruct on, and for an appellate court to affirm, an LIO." *United States v. Girouard*, 70 M.J. 5, 9 (C.A.A.F. 2011); *see also* Article 79, UCMJ, 10 U.S.C. § 879 (providing an accused may be found guilty of an offense necessarily included in the charged offense, or of an attempt to commit the charged offense, or of an offense necessarily included in the latter). Whether one offense is an LIO of another offense is a question of law reviewed de novo. *Girouard,* 70 M.J. at 9.

11

We previously provided the elements for housebreaking. The elements of unlawful entry, in violation of Article 134, UCMJ, presented by the military judge at trial, were: (1) that on or about 29 October 2018, Appellant entered the property of another; (2) the entry was unlawful; and (3) that, under the circumstances, Appellant's conduct was to the prejudice of good order and discipline in the armed forces. *See also* 2016 *MCM*, pt. IV, ¶ 111.b.

In *United States v. Jones,* 68 M.J. 465 (C.A.A.F. 2010), the United States Court of Appeals for the Armed Forces (CAAF) held,

> Under the elements test, one compares the elements of each offense. If all of the elements of offense X are also elements of offense Y, then X is an LIO of Y. Offense Y is called the greater offense because it contains all of the elements of offense X along with one or more additional elements.

*Id.* at 469.

In *United States v. Armstrong*, the CAAF stated that a court could apply the elements test in two ways: (1) "by comparing the statutory definitions of the two offenses[;] [where] [a]n offense is a lesser included offense of the charged offense if each of its elements is necessarily also an element of the charged offense," 77 M.J. 465, 469 (C.A.A.F. 2018); or, (2) "by examining the specification of the charged offense[;] [where] [a]n offense can also be a lesser included offense of the charged offense if the specification of the charged offense is drafted in such a manner that it alleges facts that necessarily satisfy all the elements of each offense." *Id.* at 470.

**3. Analysis**

Applying the elements test from *Jones*, the elements of unlawful entry are not *fully* contained within the elements of housebreaking since unlawful entry has an additional element requiring Appellant's actions be either prejudicial to good order and discipline or service discrediting. "[T]he terminal element of an Article 134, UCMJ, offense is not inherently included within other elements and is instead a separate and distinct element that the [G]overnment must prove." *United States v. Coleman*, 79 M.J. 100, 104 (C.A.A.F. 2019) (citation omitted). Therefore, under *Jones* and its progeny, we find that unlawful entry is not an LIO of housebreaking.[12]

---

[12] For examples of the CAAF's application of the *Jones* test, *see Girouard*, 70 M.J. at 9; *United States v. McMurrin*, 70 M.J. 15 (C.A.A.F. 2011); *United States v. Alston*, 69 M.J. 214 (C.A.A.F. 2010).

As such, because Appellant was not charged with unlawful entry, we look to whether the military judge had jurisdiction to accept Appellant's plea to unlawful entry. "Jurisdiction is the power of a court to try and determine a case and to render a valid legal judgment." *United States v. Harmon,* 63 M.J. 98, 101 (C.A.A.F. 2006). Whether the trial court has jurisdiction is a legal question we review de novo. *Id.*

Appellant's case is similar to *United States v. Nealy,* 71 M.J. 73 (C.A.A.F. 2012). In *Nealy*, the appellant argued that under R.C.M. 201(b), *Requisites of court-martial jurisdiction*, "'[e]ach charge before the court-martial must be referred to it by competent authority.' R.C.M. 201(b)(3). Referral is defined, generally, as 'the order of a convening authority that charges against an accused will be tried by a specified court-martial.' R.C.M. 601(a)." *Id.* at 75 (alteration in original). The CAAF held that

> where a particular charge or specification was not referred to a court-martial, either formally or informally, by the officer who convened the court-martial (or his successor in command), the court-martial lacks jurisdiction to enter findings over that charge or specification.

*Id.* at 76. The CAAF further stated, "[I]t is the convening authority's personal decision, and a prerequisite to jurisdiction, that a charge be referred to court-martial." *Id.*;[13] *see also Girouard*, 70 M.J. at 10 (stating due process "does not permit convicting an accused of an offense with which he has not been charged" and "'the Due Process Clause requires the prosecution to prove beyond a reasonable doubt all of the elements included in the definition of the offense *of which the defendant is charged*'" (citation omitted) (quoting *Patterson v. New York*, 432 U.S. 197, 210 (1977)).

R.C.M. 907(b)(1) states "[a] charge or specification *shall* be dismissed at any stage of the proceedings if the court-martial lacks jurisdiction to try the

---

[13] In *Nealy*, the appellant pleaded guilty to an offense that was not a LIO of the charge *referred* to the court-martial based on the *Jones* test, but was listed as a LIO under the *MCM* in effect at the time. *See Nealy,* 71 M.J. at 73; *see also Jones,* 68 M.J. 465. Although the CAAF held that if an offense is not a charged offense or actual LIO, the court-martial has no jurisdiction over the offense, the CAAF ultimately found appellant was not prejudiced because the convening authority intended to refer the non-LIO (in part because it was listed in the *MCM* at the time) and the law had recently changed. *Nealy,* 71 M.J. at 74. Unlike *Nealy*, the facts of Appellant's case are different, in that it has been established since *Jones* that an Article 134, UCMJ, offense cannot be an LIO of an enumerated offense due to the terminal element.

accused for the offense[,]" (emphasis added); this is a nonwaivable issue. Additionally, R.C.M. 910(a) does not give an accused the option to pleading to an offense *not* charged, notwithstanding LIOs of a charged offense. Despite Appellant pleading guilty, the trial court was not empowered to find Appellant's plea to unlawful entry provident, as unlawful entry is not an LIO of housebreaking and Appellant had not been charged with unlawful entry. We find the court-martial lacked jurisdiction in accepting Appellant's guilty plea of unlawful entry.[14]

## III. CONCLUSION

The findings and the sentence are **SET ASIDE**. Charges II and III and their Specifications are **DISMISSED WITH PREJUDICE**. All rights, privileges, and property of which Appellant has been deprived by virtue of the findings and sentence set aside by this decision are ordered restored. *See* Articles 58b(c) and 75(a), UCMJ, 10 U.S.C. §§ 858b(c), 875(a).


KEY, Senior Judge (concurring in part and in the result):

I generally concur with the lead opinion, including the result. Threatening to disclose another's actual misconduct—absent circumstances not present here—is not wrongful. To hold otherwise would be to criminalize situations in which a victim expresses to an offender an intent to report the offender's crimes to the authorities. The Government relies on the argument that Appellant did not know whether AG had actually violated the dormitory rules when he

---

[14] In *United States v. Conliffe*, 67 M.J. 127 (C.A.A.F. 2009), our superior court affirmed a conviction for unlawful entry as an LIO of housebreaking. However, *Jones*, which was a 4–1 decision, appears to have overruled *Conliffe* on this issue. Judge Baker, who wrote the majority opinion in *Conliffe*, dissented in *Jones*, opining,

> [B]ecause the statutory elements of clauses 1 and 2 of Article 134, UCMJ, of course, do not and cannot line up with any of the enumerated offenses, the majority's decision means that offenses charged under clauses 1 and 2 of Article 134, UCMJ, can never be [LIOs] to any other punitive article in the UCMJ, or with respect to clause 3 of Article 134, UCMJ. Additionally, the eighteen enumerated offenses for which the President in the *MCM* has expressly promulgated [LIOs] under Article 134, UCMJ, are invalid.

*Id.* at 474 (Baker, J., dissenting); *see also United States v. McMurrin*, 69 M.J. 591, 596 (N.M. Ct. Crim. App. 2010) (questioning the viability of *Conliffe*, noting it was "narrowly decided" and predated *Jones*.).

threatened to disclose her misconduct. This argument misses the mark, as there is little distinction between a person declaring the intent to report confirmed misconduct and the intent to report *suspected* misconduct. Of course, in this case, AG actually admitted to violating the dormitory rules, so to the extent Appellant merely suspected a rule violation, his suspicions were far from groundless. What was wrongful about Appellant's course of conduct was his effort to extract some unknown benefit from AG in exchange for not reporting her. As the majority cogently explains, this amounts to extortion, an offense with which Appellant was not charged.[*]

After determining Appellant did not make a threat supporting a conviction under Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934, the majority somewhat leaps to the conclusion that Appellant's conviction for housebreaking under Article 130, UCMJ, 10 U.S.C. § 930, is factually insufficient. There is a difference between these offenses in that the communicating a threat offense requires the actual communication of a threat, whereas housebreaking merely requires *the intent* to commit an offense (in conjunction with unlawful entry). In this case, there is no need to speculate about Appellant's intentions, because we have his own words on the note he placed in AG's room. That note demonstrates Appellant's extortionate intent, while the Government charged Appellant with housebreaking "with the intent to commit a criminal offense, to wit: communicating a threat, therein." This presents a closer question than the majority opinion suggests, as the elements for extortion under the UCMJ amount to: communication of a threat (to include accusing another of a crime) with the intent to unlawfully obtain something in return. *See Manual for Courts-Martial, United States* (2016 ed.), pt. IV, ¶¶ 53.b. and 53.c.(2). After all, "[t]he military is a notice pleading jurisdiction." *United States v. Fosler*, 70 M.J. 225, 229 (C.A.A.F. 2011) (citing *United States v. Sell*, 11 C.M.R. 202, 206 (C.M.A. 1953)). Charges under the UCMJ are sufficient if they contain the elements of the offense charged, inform the accused what he or she must defend against, and are adequate to bar a later prosecution for the same offense. *Id*. Given that Appellant vigorously litigated—both at trial and on ap-

---

[*] As explained in the *Manual for Courts-Martial, United States* (2016 ed.) (2016 *MCM*), the threats encompassed by the offense of extortion under Article 127, UCMJ, 10 U.S.C. § 927, include threatening to accuse a person "of any crime." Pt. IV, ¶ 53.c.(2). The offense of communicating a threat, however, requires a statement "expressing a present determination or intent to *wrongfully* injure the person, properly, or reputation of another person, presently or in the future." 2016 *MCM*, pt. IV, ¶ 110.b.(1) (emphasis added). Thus, the threat in an extortion scheme need not be wrongful in and of itself; instead, the focus of the offense is on an accused's efforts to extract some benefit from a threat to take some action, whether lawful or otherwise.

peal—whether his conduct amounted to communication of a threat under Article 134, UCMJ, along with the fact Appellant was specifically charged with communicating a threat under Article 134, UCMJ, I would conclude the housebreaking specification, as charged here, necessarily incorporates the intent to communicate a threat as defined in Article 134.

The Government needed to prove Appellant *intended* to communicate a threat, not that he actually successfully did so. Appellant plainly intended to wrongly use his information about AG's misconduct as leverage to gain some personal benefit, but that is inadequate to prove he threatened to wrongfully injure her by disclosing the information under the Article 134, UCMJ, offense. Thus, I conclude the Government failed to prove Appellant intended to communicate a threat, and—by extension—failed to prove he committed the offense of housebreaking, and I agree with the outcome reached by the majority.

Concluding neither the communication of a threat specification nor the housebreaking specification is legally or factually sufficient, I believe the inquiry is complete, and I see little purpose or benefit in analyzing Appellant's guilty plea or the question of whether the court-martial had "jurisdiction" to accept the plea. Appellant may have pleaded guilty to unlawful entry under the erroneous belief that such was a lesser-included offense, but he was convicted of housebreaking. Because we are setting aside that conviction, we need not pore over Appellant's guilty plea. Under Article 66, UCMJ, 10 U.S.C. § 866, our authority extends to "the findings and sentence as entered into the record." By virtue of the fact the military judge never entered a finding as to unlawful entry, I question the purpose of reviewing the providence of a plea to that uncharged offense. Moreover, by setting aside the actual findings in this case, there is no error left to correct with respect to this plea, and I do not subscribe to the majority's analysis on this point.

FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court